[Civil No. 1903.   Filed December 15, 1922.]

[210 Pac. 1046.]

## BENJAMIN B. CROSBY and WAITY A. CROSBY, Appellants, v. CLAUDE MURRAY and ENOS PITKINS, Appellees.

1. CHATTEL MORTGAGES — AWARD OF BOTH INTEREST AND POSSESSION OF MORTGAGED PROPERTY ON FORECLOSURE HELD IMPROPER.—Where a note, secured by chattel mortgage on grazing leases of state lands, provided that the debt should not bear interest, and the mortgage provided that the mortgagee should be entitled to the free use of the range for his own stock, it was contemplated that the mortgagee should not be entitled to both interest and possession of the range, and where, in an action to foreclose the mortgage, the parties stipulated that the mortgagee was entitled to interest, a provision in the decree giving him also the right to possession during the period of redemption was improper.

2. PLEADING—MOTION TO STRIKE OUT COUNTERCLAIM HELD EQUIVALENT TO A DEMURRER.—Where a counterclaim under Civil Code of 1913, paragraph 480, states no cause of action, an order striking it out on motion is proper; the motion to strike out being in the nature of a demurrer.

3. CHATTEL MORTGAGES—MORTGAGOR HELD TO HAVE WAIVED RIGHT TO RECOVER VALUE OF PROPERTY AS FOR CONVERSION.—Where the holder of an absolute bill of sale of grazing leases on state land, on default in payment of note for which the bill of sale was given as security, secured a transfer of the leases to himself on the books of the State Land Commission, and, after the bill of sale had been decreed a mortgage, reassigned such leases to the mortgagor, who accepted the same and agreed to repay the rental advanced thereon by mortgagee, there was a waiver by the mortgagor of any right that he might have to recover the value of the leases on the theory of conversion.

4. CHATTEL MORTGAGES — INJURY TO CREDIT HELD NOT A BASIS FOR RECOVERY OF DAMAGES.—Where plaintiffs loaned money to defendants, taking an absolute bill of sale to grazing leases ·from the state, and thereafter, without right, caused such leases to be transferred on the books of the Land Commission, to plaintiffs, the latter, in an action to foreclose the bill of sale as a mortgage, could not be held liable on defendants' counterclaim for damages for impairment of their credit in not being able, on account of having no other property, to borrow money on the land as security, because the title had been so transferred.

5. CHATTEL MORTGAGES—LOSS OF PROFITS IN BEING PREVENTED FROM BUYING AND FEEDING CATTLE HELD TOO SPECULATIVE.—Where plaintiffs loaned money to defendants, taking an absolute bill of sale to state grazing leases and wrongfully caused the leases to be transferred to themselves on the books of the Land Commission, and the transaction was declared a mortgage, plaintiffs, in an action to foreclose, were not liable on defendants' counterclaim for damages in not being able to use such leases as security for the leasing or purchasing of livestock; such damages being too speculative.

APPEAL from a judgment of the Superior Court of the County of Apache. Andrew S. Gibbons, Judge. Judgment modified and, as modified, affirmed.

Mr. George H. Crosby, Jr., for Appellants.

Messrs. Norris & Norris, for Appellees.

ROSS, C. J.—On November 1, 1918, Claude Murray and Enos Pitkins let Benjamin B. Crosby and Waity A. Crosby, his wife, have $3,271.61, and took their note for same without interest, payable at the Round Valley Bank of Springerville, Arizona, on or before May 1st (1919). At the same time they conveyed, by bill of sale absolute on its face, to Murray and Pitkins, certain leaseholds held by them, or trustees for them, from the state of state lands, and the improvements thereon. In an escrow agreement, of even date, Crosby and wife agreed to deposit, with the Round Valley Bank, all the leases of the land de-

scribed in the bill of sale, with assignments thereof, together with the aforesaid bill of sale. It was further stipulated, in escrow agreement, that if said Crosbys paid the face of the note without interest, on or before May 1, 1919, the Round Valley Bank should deliver to them the assignment of leases and the bill of sale, and failing to pay note without interest, on or before that date, the bank should deliver assignments of leases and bill of sale to Murray and Pitkins. It was also agreed that the Crosbys should be "allowed the free use of range and water for head of stock during the winter of 1917–18 up to the first day of May, 1918," and that Murray and Pitkins, in consideration of the loan of said $3,271.61, without interest, should "be allowed free and exclusive use of all watering places and ranges belonging to the said B. B. Crosby, or the above-mentioned leases, during the winter of 1918–19; and up to the first day of May, A. D. 1919, with the exception" above stated. The note was not paid May 1, 1919, and thereafter, and some time before July 21, 1919, Murray and Pitkins were given, by the Round Valley Bank, the assignments of leases and the bill of sale and they returned the note to the makers, the Crosbys. August 2, 1919, the bill of sale was recorded in Book No. 2, Bill of Sale Records of Apache County. On or about July 21, 1919, Murray and Pitkins presented the leases, from the state to the Crosbys, together with the latter's assignments thereon, to the Land Commission of the state, and procured from the state leases to themselves and others, for their use and benefit, of all said premises and improvements.

Later, in a suit, between the parties in the superior court of Apache county, the bill of sale and escrow agreement were construed as, and decreed to be, a chattel mortgage, and not an absolute sale. In January, 1920, the present suit was commenced by Murray

and Pitkins to collect the note and foreclose the bill of sale as a mortgage on the property therein described.

The complaint alleges that the bill of sale had been determined to be a mortgage, covering and constituting a lien upon the described leases and improvements; that plaintiffs had erroneously caused said leases to be transferred and assigned on the records of the State Land Department and had, through mistake and error, returned the promissory note to the defendants in whose possession it was at the time of bringing the suit; offers to reassign all leases to defendants and restore them to their original position and rights under the leases and leasehold interest, subject to their mortgage lien. It is further alleged that the plaintiffs paid to the Arizona State Land Office the sum of $269.60, being the accumulated annual rent due on said leases. In addition to these allegations, the complaint sets forth that the plaintiffs used all of said property and leasehold interests and rights, up to about the 10th of August, 1919, when the defendants, in violation of their agreement, and without the knowledge or consent and against the will or wish of the plaintiffs, entered into and took possession of the property.

The plaintiffs in their prayer asked, among other things:

"That upon the filing of this complaint an immediate order be entered directing defendants to quit and surrender possession of all leasehold interests in the premises to plaintiffs, pending final hearing and judgment in this action."

The defendants' answer admits the execution of all of the described instruments, and that they had been decreed to be a mortgage lien against said property; denies the possession or right of possession of the premises in the plaintiffs.

In a cross-complaint the defendants set up a counterclaim, claiming that by reason of the plaintiffs causing the leases of state land to be transferred from the defendants to the plaintiffs, the defendants were prevented and hindered from borrowing the money to repay their indebtedness, that being their only source of obtaining money to pay said indebtedness; that defendants could have easily borrowed, and had many opportunities to borrow, the money to repay this loan, but that now there is a stringency for money; that because of the plaintiffs, wrongfully and without warrant of law, so causing the transfer of said leases the defendants, did not, when money was plentiful, borrow, and now cannot borrow, said money to their injury in the sum of $2,000; that because of said wrongful transfer defendants have been prevented from using the ranges as security and surety for the leasing and purchasing of livestock on various occasions since July 21, 1919, to their damage in the sum of $2,000. On motion of the plaintiffs the counterclaim was stricken.

At the trial it was stipulated that the defendants were indebted to the plaintiffs in the sum of $3,271.61, with interest thereon at the rate of six per cent per annum from the first day of May, 1919, and in the sum of $269.60 on account of moneys paid by plaintiffs to the Arizona state land office as annual rental on the property in controversy, with interest thereon at the rate of six per cent per annum from the twenty-fifth day of July, 1919, and that the plaintiffs were entitled to an attorney's fee of ten per cent on the amount found due.

The court found from the contracts in evidence that the plaintiffs were entitled to the free use of all the watering places and ranges belonging to the defendants or the leases mentioned in said contract, and that they are now so entitled to the possession

thereof, and that the defendants are entitled to such joint use of the ranges and waters as will not interfere with the plaintiffs, until the payment of the indebtedness herein found to be due or during the period allowed by law for redemption of the property in case the same is sold under judgment. The conclusions of law were in accordance with the findings. The judgment was for the sum stipulated to be due and for the joint use of the watering places and ranges according to the findings. The defendants appealed from the order of the court striking their counterclaim, and also that part of the judgment giving to the plaintiffs the joint use of the watering places and ranges until the payment of the indebtedness or during the period of redemption.

The defendants having stipulated that plaintiff should have judgment for the annual rental paid by them on account of leases, we conclude that at the time of trial leases had been readjusted or reassigned by plaintiffs to defendants, otherwise the defendants would not have agreed to repay to plaintiffs such rentals together with the interest thereon from the date such rentals were paid to the Land Commission. The judgment, therefore, in favor of plaintiffs for the debt of $3,271.61 and interest from May 1, 1919, the rents, and ten per cent attorney's fee, is not assailed by defendants, but, on the contrary, is admitted to be for amounts justly due and owing.

That part of the judgment decreeing plaintiffs entitled to the joint use of the waters and ranges on leased premises with defendants is assigned as error.

The judgment allows plaintiffs interest from May 1, 1919, on the loan made to defendants; whereas, under the agreement no interest was to be charged while plaintiffs were using the water and range and improvements on leased lands. The plaintiffs are not entitled to both the interest on loan and the use

of range and water and improvements. If given interest on loan, they should not be allowed the use of premises and improvements. Since the judgment for interest was by stipulation, we think that part of it, giving plaintiffs the joint use of water, range and improvements with defendants, should be stricken.

The striking of defendants' counterclaim upon motion of plaintiffs is also assigned as error. Although the reasons upon which the court granted the motion do not appear in the ruling, we gather from the briefs and arguments of counsel that the court thought the cause of action set out in cross-complaint did not fall within the terms of paragraph 480, Civil Code of 1913, authorizing a counterclaim by a defendant when it is connected with or arises out of the contract sued on, or out of the transaction pleaded in the complaint, as the foundation of plaintiff's claim. We do not think it necessary to determine that question. It does not appear to us that the facts stated constitute a cause of action against the plaintiffs. If that be true, by treating the motion to strike as in the nature of a demurrer (*Finney* v. *Raudabaugh,* 182 Mo. App. 246, 168 S. W. 314) the order to strike was properly made. The wrong charged against plaintiffs is that plaintiffs, without foreclosing their mortgage lien thereon, caused defendants' leases of state lands, which had been assigned to plaintiffs as security, to be surrendered and other leases therefor to be executed to themselves; that said state land leases were their only source to obtain money to pay plaintiffs, and that by reason of plaintiffs' wrongful act they were deprived of that source to their damage in the sum of $2,000; and further that such act deprived defendants of using such leases as security and surety for the leasing or purchasing of livestock on various occasions

since July 21, 1919, to their damage in the sum of $2,000.

By ratifying the act of plaintiffs and accepting a reassignment to them of leases and paying the rental advanced thereon by plaintiffs, defendants waived the right to sue for value of the property charged to have been converted. Having accepted a return of the property, they can only claim damages for any injury they may have sustained during the time they were deprived of its use. It is not claimed that the property itself was, or could be, injured by the act committed by plaintiffs. The only claim is that plaintiffs' act in changing leases affected defendants' credit so that they could not borrow money to pay plaintiffs. If that be a fact, we cannot see how plaintiffs should be mulcted in damages for it. It was defendants' misfortune that they had no other property to offer as security for a loan to pay the note and mortgage admittedly long past due on July 21, 1919. The very proposition carries with it the thought that it was their lack of resources, and not the act of plaintiffs, that prevented their borrowing money to pay note and mortgage. If defendants could recover on that ground, then the right of action could not arise when a party had other resources than the mortgaged property upon which to borrow money, for the purpose of paying his debt. The law does not recognize such distinction between the rights of defaulting debtors. The duty of one to meet his obligations is as sacred and binding as that of the other and is not dependent upon financial standing.

The other claim of defendants, to the effect that they were unable to lease or purchase livestock to their damage in the sum of $2,000, because of the acts of plaintiffs, besides being subject to the above criticism, is too speculative to be the foundation of a cause of action. Suppose they could have leased

or purchased livestock, who could say that the venture would have been profitable or that a loss would not have resulted.

"Compensation is the standard for the measure of damages. . . . With the exception of those rare cases in which . . . damages may be recovered, of which the one at bar is not one, a defendant is never liable to pay more than the actual loss which he has inflicted upon the plaintiff by his wrong. Nor is the plaintiff permitted to exaggerate, increase, or speculate on his loss so as to inflict a penalty upon the defendant." *Hoyt* v. *Fuller,* 104 Fed. 192, 43 C. C. A. 466.

With the modification suggested, the judgment of the lower court is affirmed.

McALISTER and FLANIGAN, JJ., concur.