## HOYT v. FULLER.

(Circuit Court of Appeals, Eighth Circuit.   October 9, 1900.)

### No. 1,343.

1. DAMAGES—DETENTION OF PERSONAL PROPERTY—MEASURE OF DAMAGES
   The general rule for the measure of damages for the wrongful detention of personal property is the value of the use of that property during the detention.

2. SAME—HIGHEST MARKET VALUE.
   Compensation is the basic rule for the measure of damages.  In an action for special damages for the loss of a sale of personal property at the highest market value during its detention, it is competent for the defendant to prove that within 30 days after the property was returned to the plaintiff, while he still held it, and before the action was commenced, its market value was as high, and its sale as feasible, as during the detention.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Southern District of Iowa.

This was an action for damages for an excessive levy.  In the amended complaint upon which the action was tried the defendant in error, J. L. Fuller, alleged that on October 4, 1894, the plaintiff in error, Sue A. Hoyt, caused a writ of attachment against him for the sum of $517.50 to be levied upon 23,000 bushels of his corn in the crib, which was then situated in Guthrie county, in the state of Iowa; that this property was worth $11,500, and the levy was excessive in the sum of $10,745; that the plaintiff in error retained this property under the levy until December 6, 1894, when she dismissed the suit and released the levy; that the market value of the corn was 45 cents per bushel when the writ was levied, and that it advanced to 65 cents per bushel while the property was detained under the levy; that on account of the levy the defendant in error was unable to sell his corn at the highest market price thereof, and was damaged in the sum of $4,600.  The plaintiff in error denied all the allegations of the complaint, except the issue and levy of the writ, and pleaded a counterclaim.  There was a trial to a jury.  The evidence disclosed the fact that the defendant in error held his corn from the time it was returned to him in December, 1894, until August or September, 1895; that the market value of corn in Guthrie county was from 50 to 55 cents, per bushel in the month of November, 1894.  Thereupon the plaintiff in error offered to prove that in the months of January, February, March, April, and May, 1895, the market value of corn in that county was as high as it was during the period of detention under the writ.  This evidence was excluded, and an exception was taken.  There were many other objections and exceptions to the rulings of the court in the course of the trial, and at its close there was a verdict and judgment for $2,800 damages, and interest from November 19, 1894, amounting in the aggregate to $3,447.73.  The writ of error has been sued out to reverse this judgment.

I. M. Earle, for plaintiff in error.

A. B. Cummins, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The measure of damages for the conversion of personal property is the value of that property at the time and place of its conversion, in the absence of a plea and proof of facts and circumstances which entitle the injured party to special damages. Suth. Dam. § 1109; Brown v. Allen, 35 Iowa, 306; Gravel v. Clough, 81 Iowa, 274, 46 N. W. 1092; Thew v. Miller, 73 Iowa, 742, 36 N. W. 771. One of the exceptions to the general rule is that the measure of damages for the conversion of stocks and like speculative property is the highest market value which the property attains between the time of its conversion and the expiration of a reasonable time to enable the owner to put himself in statu quo after notice to him of the conversion. McKinley v. Williams, 74 Fed. 94, 103, 20 C. C. A. 312, 321, 36 U. S. App. 749, 763; Galigher v. Jones, 129 U. S. 193, 201, 32 L. Ed. 658. This, however, is not an action for conversion. It is an action for the simple wrongful detention of personal property for the period of about two months. The measure of damages for the detention of personal property is the value of its use during the period of detention, in the absence of a plea and proof of facts and circumstances which warrant special damages. Lumber Co. v. Spencer, 81 Iowa, 549, 550, 46 N. W. 1058. So far as this record discloses, the value of the use of the corn in the crib during the two months it was retained under the levy was nothing. But the plaintiff, the defendant in error here, recovered $2,800 damages for the difference between the highest market value this corn reached during the period of detention and its market value on the day it was released from the levy. The defendant offered to show that within 30 days after it was released, and while it was still held by the plaintiff, its market value was as great as it was at any time during the detention, and this evidence was rejected. Conceding for the purpose of the consideration of this question, but not deciding, that under some circumstances the highest market value of personal property during its detention is the basis for the measure of damages, the question is whether or not, in an action for special damages, consisting of the difference between the highest market value of personal property during its wrongful detention and its market value when returned to the owner, it is competent for the wrongdoer to show that after the property was returned to the plaintiff, and before he commenced his action, its market value was as great and its sale as feasible as at any time during the detention.

Compensation is the standard for the measure of damages. Rockefeller v. Merritt, 76 Fed. 909, 917, 22 C. C. A. 608, 616, 40 U. S. App. 666, 679. With the exception of those rare cases in which punitive damages may be recovered, of which the case at bar is not one, a defendant is never liable to pay more than the actual loss which he has inflicted upon the plaintiff by his wrong. Nor is the plaintiff permitted to exaggerate, increase, or speculate on his loss so as to in-

flict a penalty upon the defendant. He is as much bound to protect the latter against inconsequential and unnecessary damages as the defendant is to pay to the plaintiff his actual loss. In the case before us the plaintiff has recovered damages to the amount of $2,800 and interest, amounting in the aggregate to $3,447.73, because the defendant kept the levy of a writ of attachment against the plaintiff for $517.50 on 23,000 bushels of corn in the crib, worth about $11,000, from October 4, 1894, until December 6, 1894; and the highest selling price of the corn during this period was $2,800 more than it was on December 6th, when the attachment was released. The defendant is not charged with maliciously inflicting the injury. The writ of attachment is not claimed to have been unadvisedly issued, and the only complaint is that the levy under it was excessive. Why should the defendant pay such large damages, if, as she offered to prove, the plaintiff's corn was worth as much within 30 days after the levy was released as at any time during its detention under it? If the plaintiff had sold the corn on December 6, 1894, and had thereby sustained an actual loss of the difference between the value of the corn in November and its value on that day, there would have been more plausibility in his claim that the detention entailed the loss of this large amount of money upon him. But he did not do so. He held the corn until August or September, 1895. He did not commence this action until April, 1895, after the corn had advanced in price and value to the highest market price it attained at any time while the levy was upon it. The levy upon and detention of the corn was not the cause of the fluctuation in its price or value. It had no greater effect, in any event, than to prevent the plaintiff from accepting a favorable opportunity to sell it at the high price which ruled in November, 1894. The corn was returned to him uninjured, and after its return, and while he still held it, he had another opportunity to sell it at a price as high and on terms as favorable as were presented during the detention. How could it be said that he suffered any actual loss, except possibly the interest on the money from the date of the first to the date of the second opportunity to sell at the price desired? He certainly could not legally charge the defendant with anything more than the loss which the detention entailed upon him. He could not legally charge her with the loss which he would have sustained if he had sold the corn on December 6, 1894, because, in view of the fact that he held until the price advanced, that was not an actual loss. Nor could he retain his property, and speculate upon the defendant's liability. When the corn again reached the highest market value it attained during the detention, and remained there for more than four months, he could not refuse to accept the opportunity to sell it thus offered, keep the corn in his possession, and then charge the defendant with the loss he suffered because the price subsequently dropped again to the value on December 6, 1894. During the early months of 1895 he had the corn, and he had the opportunity to save himself from loss, and the defendant from liability. If he failed to embrace this opportunity, he ought not to be permitted to charge the defendant with the consequences of his unfortunate speculation. The reason of the rule which charges the defendant in con-

version with the highest market value which speculative personal property attains between the date of its conversion and a reasonable time to enable the party injured to put himself in statu quo after he receives notice that his property is converted is that during this time the defendant has or may have the property under his control, and the opportunity to realize the highest price for it at his command, while the plaintiff is deprived of this chance. The rule was adopted to prevent the party in possession and control of personal property from speculating with it to the injury of its owner. The reason of this rule pleads as cogently against allowing a plaintiff, who has recovered the possession of his property, and who may sell and deliver it at such price and on such terms as he chooses, to speculate on the liability of the defendant, and to charge him with heavy damages because at the time of its release to him, or at some times thereafter, its market value was low, when for months after its return, and while he still held it, that value was so high that he might have sold it for such a sum as would have relieved him from all loss, and the defendant from all liability. When in the spring of 1895 the market value of this corn rose as high as it was during the detention, the plaintiff had the possession and control of this property, and it was not at the command of the defendant. He had the power to sell and deliver the corn, and the defendant had no opportunity to do so. If he had exercised his power and embraced this opportunity, he would have sustained no substantial loss from the detention, and the defendant would have been relieved from all serious liability. All he lost by the detention, in any event, seems to have been an unembraced opportunity to sell the property at a given price. If within 30 days after its release, and while he still held the property, he had a later opportunity to sell it, equally favorable, he cannot be said to have suffered substantial loss because he was prevented from embracing the earlier one. The evidence that the market value of the corn was as high within 30 days after it was returned to the plaintiff, and while it was still in his control, as it was at any time while it was detained under the levy, was competent and material testimony to reduce the damages which the plaintiff claimed, and it was error to reject it. For this reason the judgment below must be reversed. Bank v. Rush, 85 Fed. 539, 543, 29 C. C. A. 333, 337, 56 U. S. App. 556, 564.

The evidence which was produced upon the trial of this case is not embodied in the bill of exceptions, and it is not intended by the views which follow to forestall the consideration by the court below of the evidence which may be presented upon the second trial, or to decide the questions of law which may arise upon that evidence. But, in view of the fact that the case must be tried again, attention is called to the following suggestions: It is difficult to conceive of any state of facts suggested by the amended complaint in this action which would sustain the extraordinary judgment that was rendered on the former trial. This is not an action for conversion. It is a simple action for unlawful detention of corn, and the general rule of damages is the value of the use of the property while it is thus detained. The plaintiff seeks to recover the difference between the highest price which corn reached during the detention and its market

price on the day the levy was released. If on the day the levy was made he had a contract, executed by some responsible party, to buy this corn at the highest price it should attain during the period of detention, and if he was prevented by the levy from performing his part of this contract, and the market value of corn rose during the detention above the price on the day of the release, there would be some show of reason in his claim. But if his claim for this $2,800 damages rests on the simple facts that the market price of corn was higher during the detention than it was when the levy was released, that he might have sold it if there had been no levy upon it, and that the sheriff held it under this levy of the writ of attachment for $517.50, we are at a loss to see how that claim can be sustained. The measure of damages based on the highest market value which property attains applies in cases of conversion of stocks of corporations, and like property of a speculative character, which has no fixed market value. Corn does not belong to this class of property. It is an agricultural product, vast in quantity, always for sale, and always having a well-known market value. If this 23,000 bushels upon which the levy was made on October 4, 1894, had been converted to her own use by the defendant on that day, there could have been no question but that the measure of damages would have been its market value at the time and place of conversion. A claim that the owner was entitled to the highest market value it subsequently attained would not have been even plausible. The ordinary rule would have measured the damages. It is not perceived why the customary measure of damages for detention—the value of the use—should not, for the same reason, limit the damages for the detention of this property. There is, indeed, a more cogent reason why the general measure should be applied in the latter case than in the former. The reason of the rule which measures the damages in conversion of speculative personal property by the highest market value is that the defendant has or may have the power to sell and deliver the property at his command when the highest price is attained, that he is thus enabled to take advantage of the opportunity to sell it at the advanced price, while the plaintiff by the conversion is deprived of that opportunity. In the case in hand, however, the defendant, who merely detained the corn under a lawful writ of attachment, had no power to sell or dispose of it,—no chance to realize the highest market value which it reached during the detention,—and, since the reason of the rule fails, the rule itself ought not to apply. There is another reason why the recovery of the extraordinary damages which the plaintiff claims in this action seems impracticable, even if the measure based on the highest market value was applicable. It is that it rests on the claim that the plaintiff was prevented from selling 23,000 bushels of corn in the crib, worth $11,000, by the mere levy of an attachment for $517.50. Such a levy could not prevent the sale of a quantity of corn of this great value. The plaintiff could have sold his corn, could have applied the $517.50 to the payment of the amount claimed under the writ, could have delivered the property, and have received the balance of its proceeds. He could have given a bond for three times the amount of the claim, $1,552.50, to deliver the property to the sheriff

to satisfy any judgment that might be obtained against it; and in this way he could have released the property from the levy, and have sold and delivered it at will. McClain's Ann. Code Iowa, § 4221; Sargent v. Fuller, 132 Pa. St. 127, 133, 19 Atl. 34; Girard v. Moore (Tex. Civ. App.) 24 S. W. 652; Drew v. Ellis (Tex. Civ. App.) 26 S. W. 95. It may be that a state of facts was proved in the former trial, and will be again, which will sustain the claim for some of the special damages which plaintiff sought, but such a state of facts is certainly not more than suggested by the amended complaint. The judgment below is reversed, and the case is remanded to the circuit court, with directions to grant a new trial.