### W. B. MOSES & SONS v. LOCKWOOD.

(Court of Appeals of District of Columbia. Submitted October 8, 1923. Decided January 7, 1924.)

#### No. 3788.

1. **Malicious prosecution ⬤25(2)—Facts held not to require peremptory instruction for defendant on ground of reliance on counsel's advice.**

   In an action for malicious attachment of plaintiff's automobile, testimony that defendant consulted counsel and laid before him all the facts *held* not to require a peremptory instruction for defendant on the theory that he relied on counsel's advice.

2. **Malicious prosecution ⬤64(2)—Direct proof of malice and absence of probable cause not essential.**

   Where plaintiff alleges that an attachment was levied maliciously and without probable cause, he has the burden of establishing his charge; but there need not be direct proof thereof, as the question whether the charge has been made out is for the jury.

3. **Malicious prosecution ⬤64(1)—Evidence held not to show rental value of automobile wrongfully attached.**

   Evidence of the rental value of other types of automobiles in good condition *held* not to show the rental value of a dilapidated automobile wrongfully attached.

4. **Trial ⬤252(1)—Instruction must be supported by evidence.**

   An instruction should not be given, unless it has some support in the evidence.

5. **Evidence ⬤522—Rental value of automobile to be established by expert testimony.**

   The rental value of an automobile during the period it was wrongfully attached is a matter of opinion, for the purpose of establishing which it is necessary to call expert witnesses familiar with the subject.

6. **Evidence ⬤547—Usual course in establishing rental value of automobile outlined.**

   The course usually pursued in establishing the rental value of a wrongfully detained automobile is, after qualifying a witness as an expert, to ask for his opinion, and, having received it, to follow by an inquiry as to the facts on which he based it.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Malicious prosecution ⊜⇒62—Testimony of rental value of attached automobile limited to period of detention.**

In an action for wrongful attachment of an automobile, testimony of rental value should be limited to use value during entire period which it was detained, and witnesses should not be permitted to testify to rental value per day and per week.

**8. Malicious prosecution ⊜⇒66—Measure of damages for wrongful attachment of automobile.**

In an action for malicious attachment of plaintiff's automobile, in estimating damages, the days when plaintiff did not have any use for his automobile should be deducted from the whole period for which he is entitled to recover damages.

**9. Damages ⊜⇒62(3)—Duty of property owner to reduce damages.**

Where a person's right of property is invaded, it is his duty to do all reasonably within his power to reduce the damages.

**10. Damages ⊜⇒62(1)—Avoidable damages not direct consequences of defendant's wrong.**

Damages which may be avoided by doing what an ordinarily prudent man would do are not the direct and natural consequences of defendant's wrong, since it is plaintiff's option to suffer them, and he is damaged, not by defendant's act, but by his own negligence or indifference to consequences.

**11. Damages ⊜⇒62(3)—Plaintiff's duty to minimize damages by giving undertaking for attached automobile.**

Where plaintiff's automobile was wrongfully taken from him by attachment, it was his duty to procure its return immediately by giving an undertaking, under Code, § 455, and thus reduce damages, unless he was not financially able to procure the undertaking.

Smith, Acting Associate Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Action by Frank L. Lockwood against W. B. Moses & Sons, a corporation. Judgment for plaintiff, and defendant appeals. Reversed.

S. Herbert Giesy, of Washington, D. C., for appellant.

Harry A. Grant, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMYTH, Chief Justice. Moses & Sons, a corporation, defendant below, having a claim against one Moore, caused an automobile to be attached by the marshal on the assumption that it belonged to him. Lockwood, asserting it was his, instituted a proceeding under section 462 of the District Code to have determined whose property it was, and obtained a finding in his favor. Thereupon he brought this action to recover $5,000 damages, on the basis that the attachment was sued out by the defendant wrongfully, maliciously, and without probable cause. He recovered a verdict for $800, upon which judgment was entered, and defendant appeals.

Many errors are assigned, but they may be disposed of under four heads, viz.: (1) Should the court have directed a verdict for the defendant on the ground that it had acted upon the advice of counsel? (2) Was there proof of malice and want of probable cause? (3) Was there any evidence of damage? (4) Was an improper measure of damages adopted by the court?

[1] 1. With respect to the advice of counsel, the testimony was in substance that one Mason, a representative of the defendant having the Moore claim for collection, consulted counsel and laid before him all the facts known to him in regard to the matter; that the counsel stated he was consulted in regard to the case, and that the facts were given to him practically as testified to by Mason. This was all. It will be noticed that Mason did not say he or any other agent of defendant relied on or received advice of counsel. He simply says that he consulted counsel, and the counsel goes no further than to confirm this statement. This is not enough.

In Staples v. Johnson, 25 App. D. C. 155, 160, a case for malicious prosecution, the court approved an instruction to the effect that, if the jury found that the defendant acted on the advice of counsel, under an honest belief that he was taking such action as was warranted by law, he having first given a full statement of the facts of the case to counsel, the verdict should be for the defendant. The Supreme Court of the United States, in Stewart v. Sonneborn, 98 U. S. 187, 196, 25 L. Ed. 116, a malicious prosecution case, announced a similar doctrine. It was there alleged that defendants wrongfully and maliciously instituted proceedings in bankruptcy against the plaintiff. Defendants rejoined that in bringing the proceedings they acted upon the advice of counsel, and they requested the court to charge in substance that, if the jury believed that they did so act, in the honest belief that they were taking and using only such remedies as the law provided for the collection of what they believed to be a bona fide debt, having first given a full statement of the facts of the case to counsel, then there was not such malice in the wrongful use of legal process by them as would entitle the plaintiff to recover in the form of action which he had adopted. The trial court refused the instruction, but the Supreme Court held that it embodied a correct statement of the law, and reversed the case on account of the refusal. It is only under facts such as those outlined in the foregoing cases that the advice of counsel may be relied on as a defense in a malicious prosecution case. Since the record here does not contain, as we have shown, the necessary facts, there was no error in refusing to sustain defendant's motion for a peremptory instruction.

[2] 2. Plaintiff, having alleged that the attachment was levied maliciously and without probable cause, had, of course, the burden of establishing his charge. Carroll v. Parry, 48 App. D. C. 453, 461. But this does not mean, as counsel seem to imply, that there must be direct proof of the allegation. It was open to the jury, as the learned trial justice instructed, to say, from a consideration of all the evidence, whether or not the charge had been made out.

[3, 4] 3. The court, at the request of the plaintiff, charged the jury that in determining the damages sustained by the plaintiff they might "consider the rental value of said automobile for said period of detention as a measure to ascertain the amount of damage sustained by plaintiff," and added, in substance, that the loss was to be determined by that rule. It is familiar law that an instruction must have some support in the evidence, else it should not be given. District of Colum-

bia v. Gray, 1 App. D. C. 500; Washington, Alexandria, etc., Railway Co. v. Lukens, 32 App. D. C. 442; Washington Railway Co. v. Downey, 40 App. D. C. 147, 155; and Sweeney v. Erving, 228 U. S. 233, 242, 33 Sup. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905. We think there was no testimony in this case showing, or tending to show, the rental value of the Lockwood automobile. It had been sold to Moore, according to plaintiff's witnesses, then to a person who returned it because it was not as represented, and afterwards found its way into Lockwood's hands. Without contradiction, the testimony showed that at the time of the levy the upholstery and the window shades were badly soiled and torn, the paint was in poor condition, and, in general, the car was sorely in need of repairs; that it would be necessary to spend $500 or $550 upon it; and that, after having done this, it would not be worth to exceed $1,400—in other words, that the value of the car at the time mentioned was not over $900. There is also testimony, undenied, that if the paint of a car was in bad condition it would be hard to rent it at any price. It was, then, the rental value of a car of this kind which was being investigated.

Lockwood said that he had interviewed a number of automobile dealers, who wanted $30 a day for a car with a chauffeur, but did not say what kind of a car they had in mind. According to another witness, the fair rental value per week of a Roamer sedan a year old, condition not given, would be $145. Still another witness said that a Jordan car would rent for $50 a week. None of the witnesses testified what a Roamer sedan, in the condition in which the unchallenged testimony showed that this car was, would bring, if rented. It needs no discussion to demonstrate that the rental value of a high-priced car would be much greater than that of a dilapidated Roamer, and that the rental value of a car in good condition and of a different type from that of the plaintiff's could have no tendency to establish the value of his car. The issue before the court related to the rental value of Lockwood's car, not to that of a different car, and, as we have said, there was no testimony showing, or tending to show, what the rental value of his car was. Therefore the instruction should not have been given.

[5, 6] As this case may be tried again, we think it proper to say that the use or rental value of a car during the period involved is a matter of opinion, for the purpose of establishing which it is necessary to call expert witnesses familiar with the subject. The course usually pursued, after showing the competency of the witness to speak, is to ask for his opinion, and, having received it, to follow by an inquiry as to the facts on which he based it. Sullivan v. Lear, 23 Fla. 463, 2 South. 846, 11 Am. St. Rep. 388; Chamberlain v. Dunlop, 126 N. Y. 45, 26 N. E. 966, 22 Am. St. Rep. 807. He then may give the things which led him to the opinion expressed. There is authority for holding that he should not be allowed to do this on his examination in chief (Harris v. Railroad Co., 141 Pa. 242, 21 Atl. 590, 23 Am. St. Rep. 278), but we believe that the other practice is the better one. If, however, the party producing the expert does not see fit to call for the grounds of his opinion, his adversary may do so on cross-examination.

[7] Witnesses in this case were permitted to testify to the rental value per day and per week. The testimony should have been limit-

ed to the use value during the entire period which it was proper to consider. It is manifest, said the Supreme Court of Tennessee in Perkins v. Brown, 132 Tenn. 294, 177 S. W. 1158, L. R. A. 1915F, 723, 725, Ann. Cas. 1917A, 124, that the rental charge per week, aggregated for a certain number of weeks, would amount to more than the sum representing the rental charge for the longer or entire detention period. To the same effect is Brookmole v. Kinchen (Tex. Civ. App.) 253 S. W. 953.

[8] It is urged that plaintiff is entitled to recover for the entire period during which he was deprived of the car, though there were days or parts of days during which he had no use for it, and there are decisions which sustain him in this contention. They proceed upon the theory that, since the plaintiff's right of property was invaded by the wrongdoer, he is entitled to recover substantial damages, that the value of the use is not the mere value of the use intended by the owner but the value of the possible use, and that the wrongdoer has no right to consider what use was in fact to be made by the owner. This does not appeal to us. Compensation is the cardinal purpose of the law of damages. Rockefeller v. Merritt, 76 Fed. 909, 917, 22 C. C. A. 608, 35 L. R. A. 633. With the exception of those rare cases in which punitive damages may be recovered, says Judge Sanborn, speaking for the Circuit Court of Appeals, Eighth Circuit, a defendant is never liable to pay more than the actual loss which he has inflicted upon the plaintiff by his wrong. Hoyt v. Fuller, 104 Fed. 192, 193, 43 C. C. A. 466. To give him damages where none have been caused is not to compensate him for a loss, but to punish the wrongdoer, and this is not permissible, except in the cases just mentioned.

We think the better rule is followed in Frey v. Drahos, 7 Neb. 194, and Smith v. Stevens, 14 Colo. App. 491, 60 Pac. 580, where it was held in substance that plaintiff could not recover merely because he had a right to use, or was in a position to use, the property taken from him, but that it was incumbent upon him to go further, and show he needed the car, and was prevented from using it by the wrongful detention of it by the defendant. This is in harmony with the decision of the Supreme Court of the United States in The Conqueror, 166 U. S. 110, 133, 17 Sup. Ct. 510, 41 L. Ed. 937. A pleasure yacht was wrongfully seized and detained for five months during the autumn and winter by the collector of customs. Damages were asked by the owner. It was urged that, as the yacht could not be used during the autumn and winter, the owner had suffered no loss. In sustaining this view the court said:

"It is not the mere fact that a vessel is detained that entitles the owner to demurrage [damages]. There must be a pecuniary loss, or at least a reasonable certainty of pecuniary loss, and not a mere inconvenience arising from an inability to use the vessel for the purposes of pleasure, or, as was said by Dr. Lushington in The Clarence, 3 W. Rob. 286: 'There must be actual loss and reasonable proof of the amount.' In other words, there must be a loss of profits in its commercial sense."

The court noted that there was not an atom of testimony tending to show that the owner bought the vessel for hire, or would have leased it if he had been able to do so. See, also, Hahlo v. Benedict, 216 Fed.

303, 308, 132 C. C. A. 447, Perkins v. Brown, ante, and Hunter v. Quaintance, 69 Colo. 28, 168 Pac. 918, as having some bearing on the point.

We gave expression to the same principle in Railroad Co. v. Car Co., 5 App. D. C. 524. In that case the plaintiff had entered into a contract with the defendant to manufacture for it a number of street cars and deliver them within a certain time. It failed to make the delivery as prescribed. The defendant, when sued for a balance claimed to be due on the contract, contended it was entitled to recover by way of recoupment for loss of profits during the delay in the delivery. The court put aside the contention as unsound, and held that it was entitled to the reasonable hire or rent of the cars for the period of delay, provided they "could and would have been in actual service" during that time.

Following the rule laid down by these authorities, if there were days when the plaintiff did not have use for his car, they should be deducted from the whole period for which he is entitled to recover damages.

[9, 10] Another principle which is applicable in this case: Where a person's right of property is invaded, it is his duty to do all reasonably within his power to reduce the damages. Damages which may be avoided by doing what an ordinarily prudent man would do are not the direct or natural consequence of the defendant's wrong, since it is plaintiff's option to suffer them. In such a situation the plaintiff is damaged, not by the defendant's act, but his own negligence or indifference to consequences. Chesapeake & Ohio Railway Co. v. Kelly, 241 U. S. 485, 489, 36 Sup. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367, and cases there cited. To the same effect are Sedgwick on Damages (9th Ed.) vol. 1, §§ 201 and 202; Hoyt v. Fuller, supra; Woodward v. Pierce Co., 147 Ill. App. 339.

[11] When the plaintiff's car was taken from him, he could have procured its return immediately by giving an undertaking under section 455 of the Code, with security approved by the court. It was his duty to do this, and thus to reduce the defendant's liability. If he had done it, the only loss which would have come to him would be that occasioned by the expense of procuring the undertaking and necessarily incurred for a car between the date of the levy and the return of his own car, assuming that he used due diligence throughout. Of course, if he was not financially able to procure an undertaking, the law would not require him to do so or lose his right to damages. In such a case he would be entitled to rely upon the rule of compensation hereinbefore stated.

The judgment is reversed, with costs, and a new trial awarded.

Reversed.

SMITH, Acting Associate Justice (dissenting). I regret exceedingly that I find myself unable to agree with the opinion of the learned Chief Justice as to the evidence and measure of damages which might be lawfully considered by the jury in reaching a verdict in this case.

The record discloses that the automobile in issue was a Roamer sedan, the possession of which was on the 29th day of April, 1918, transferred

by the Roamer Sales Company to A. J. S. Moore by a written agreement of conditional sale, which expressly retained in the Roamer Sales Company the legal and equitable title to the car until $3,250, the purchase price, with interest on all deferred payments, had been fully paid. Under that agreement Moore was required to pay $1,400 cash and to execute for the balance 12 notes, one of which fell due every month during the ensuing year. Moore defaulted in the payment of some of the notes, and in accordance with the terms of the conditional sale the company repossessed itself of the sedan which was then sold to a man named Ritter. Ritter declined to accept the car and returned it to the company.

On or about the 20th of January, 1919, Lockwood paid to the company the balance due on the machine, and in consideration of that payment Moore and the company conveyed to him their title to the sedan. After that conveyance, and while the machine was in the possession of Lockwood, it was attached by Moses & Sons on the 18th of March, 1919, as the property of Moore. Lockwood, at the time the attachment was levied, notified the marshal in the presence of the legal representatives of Moses & Sons that the automobile was his property, and not that of Moore, and that he could not see how his car could be seized for Moore's debt. Notwithstanding the claim of Lockwood, the car was taken under the attachment, and it does not appear that Moses & Sons made the levy on the advice of counsel. Whereupon, and apparently in conformity with section 462 of the Code, Lockwood filed his petition, praying that the right of property in the car be determined. The claim of title raised by that petition was tried before a jury, which returned a verdict in favor of Lockwood. In the face of that verdict, Moses & Sons refused to return the car, and filed a motion for a new trial of the matter, which motion was denied. Moses & Sons then noted an appeal, and declined to surrender the car pending negotiations for a compromise. The car was not returned to Lockwood until its return was expressly ordered by the court, 52 days after it was taken under the attachment.

Lockwood then commenced his suit to recover damages from the appellant for attaching the sedan maliciously and without probable cause. In his declaration Lockwood expressly averred that the value of the use of the machine was $25 per day. After issue joined the case went to trial, and Roland G. Morisette and Phillip Brown gave testimony on behalf of Lockwood as to the rental value of automobiles. Morisette testified that between April and June, 1919, the rental value of a Roamer sedan one year old car was $145 per week without a chauffeur, and that that weekly rental included a profit of 25 per cent. To that testimony counsel for the defendant objected, *on the ground that Lockwood had expended only $50*, presumably for a machine to take the place of the one attached. The objection was overruled, and the defendant excepted. Brown, engaged in the business of hiring automobiles, said that a Cadillac sedan rented for $25 per day and no less.

On behalf of Moses & Sons, George Richard Morrissey, Amos A. Roper, and Phillip Millstone testified as to the value and rental value of automobiles. Morrissey said that he was familiar with automobiles,

their repair, and cost of upkeep; that the Roamer sedan, when taken, needed painting and an expenditure of $50 on the engine; that the value of the machine was $1,300 or $1,400; that it would cost $500 or $550 to put the car in condition, and that, if not fixed up, it would be worth about $700. Roper said that he had the hacking privilege of the Burlington Hotel and that, while he never rented a Roamer, he had rented for 30 days, at $10 per day, Jordan cars selling for $3,250. This witness also declared that in March, April, and May of 1919 closed cars were preferred, and that an automobile of that class was worth to a business man for business purposes $8 per day, or $50 a week. On cross-examination he stated that *secondhand cars were quite in demand in March, April, May, and June, 1919, and that he rented Jordan sedans at $475 per month without a chauffeur.* Millstone testified that he could not give the rental value of a Roamer without a driver, but that sedans of the 1919 model were worth from $50 to $60 per week, provided the paint was in good condition and the mileage used did not exceed 350 miles per week. According to this witness, a Roamer car of the 1919 type, requiring an expenditure of $550 repairs, was worth $1,400 or $1,500, double the value testified to by Morrissey.

The testimony submitted as to rental value was very conflicting. The jury, exercising its prerogative, resolved the conflict in favor of the plaintiff, and evidently gave credit to the testimony of Lockwood's witness, Morisette, the only witness who testified to the rental value of a Roamer sedan one year old, which was the age or time in use of Lockwood's Roamer sedan. That testimony tended to show that the rental value of the sedan was $145 per week inclusive of a 25 per cent. profit. Deducting the profit, which, of course, took into account overhead depreciation, maintenance, and cost of operation, left a minimum rental value of $108.75 per week, or $15.54 per day.

The record as made discloses, first, that the Roamer sedan was the property of Lockwood, and that Moore, the debtor of Moses & Sons, had no right, title, or interest in it whatever; second, that it was attached after notice of Lockwood's ownership, and that the levy was made, not on the advice of counsel, but maliciously and without probable cause; third, that Lockwood, apparently without unreasonable loss of time, sought to recover his property by proceedings under section 462 of the Code of the District, as he had a right to do, and that after a verdict in his favor for the return of the sedan Moses & Sons, with all the evidence before them of Lockwood's ownership, delayed the return of the car to Lockwood by a motion for a new trial, which was denied, and then by noting an appeal pending negotiations for a compromise; fourth, that the appellant unlawfully detained the automobile for 53 days, and did not return it to Lockwood until ordered to do so by the court; fifth, that the Roamer sedan had been less than a year in use at the time it was attached, and that a car of that class and age had a rental value without a chauffeur of $145, which sum included a profit of 25 per cent.; sixth, that, deducting profit, the net use value of a Roamer sedan one year old was $108.75 per week, or $823.62 for 53 days.

The prevailing opinion holds in effect, first, that there was no testimony in the case either showing or tending to show the rental value

of Lockwood's automobile; second, that the evidence on the part of the plaintiff as to the rental value of plaintiff's car was rendered worthless by testimony for the defense tending to show that the paint, upholstery, and window shades were in bad condition, that the car needed painting and repairs, which would require an expenditure of $500 or $550, that the value of the car at the time it was attached was about $900 and that it would be hard to rent such a car at any price; third, that after the competency of an expert witness to speak has been established, and after he has given his opinion, the duty devolves on *the party calling him to demand the facts upon which he bases opinion;* fourth, that the rental value of plaintiff's car by the *day* or *week* was wholly immaterial and irrelevant, and neither proved nor tended to prove its rental value *for the whole period of detention;* fifth, that plaintiff was not entitled to recover the use value of his car for the whole period of detention, but only its use value for those days or parts of days when he had use for it; sixth, that the plaintiff was under the imperative obligation to do everything reasonably within his power to reduce damages, and that, having failed to give the undertaking provided for in section 455 of the Code, he was entitled to recover only for such part of the period of detention as was reasonably required for the giving of the bond.

I cannot bring myself to believe that the judgment of the lower court should be reversed for any of the reasons assigned. Morisette, assistant manager of the Gregg Taxicab Company, and engaged in the business of hiring out automobiles, was the only witness on either side who testified to the rental value of a Roamer sedan one year old. Can it be said that that was no evidence at all of the rental value of Lockwood's machine, which had been in use for less than a year, or that the court below would have been justified in instructing the jury that Morisette's testimony was no evidence as to rental value, and that therefore a verdict for the defendant must be rendered? Can we, who are not judges of the facts, invade the province of the jury and declare that the testimony of Morisette, a competent witness, was without weight, or that it became utterly worthless because Morrissey, defendant's automobile repairman, testified for the defense that the car needed painting and repairs, which would cost $500 or $550?

Morrissey said, it is true, that it would be hard *to dispose* of a car with the paint in bad condition. He did not say *hard to rent,* but, even if he had, just why should we give full credit to his testimony rather than to that of Roper, a renter of automobiles, who testified for the defendant that in March, April, and June, 1919, automobiles were much in demand, and that he "could handle nearly anything that would roll." For all that we know, or can know, an automobile in use for a year would require painting and repairs, and we must assume that plaintiff's expert, Morisette, in giving his opinion as to the rental value of such a car, took those factors into consideration.

No objection whatever having been made to the competency of Morisette to testify, the plaintiff was fully warranted in submitting to the witness the facts of the case as he claimed them to be, and to ask for Morisette's opinion as to the rental value of a Roamer sedan which had been in use for a year. Plaintiff was not bound to submit to the

witness the facts as claimed by the defendant, which facts might be either unknown to the plaintiff or regarded by him as untrue. The defendant had the right to cross-examine Morisette as to the physical condition of the Roamer sedan on which his opinion was based, and, if that cross-examination developed that the witness had in mind an automobile in first-class condition, the appellant might show by way of defense that the sedan attached was out of repair or in bad condition. On that defense the appellant might argue to the jury that it was its duty to disregard the expert testimony and to accept that of the defense; but the weight, as well as the value, to be given to the evidence for the respective parties, was for the jury to decide. It seems to me that we assume an obligation which belongs exclusively to the jury if we completely ignore the testimony on which the verdict was evidently based, or if we give a credit or weight to statements of witnesses for the defense which the jury evidently did not see fit to accord.

The case of Sullivan v. Lear, cited by the Chief Justice, as I read it, fully sustains the procedure for which I contend. Indeed, the court in that case expressly held that the expert was qualified to give an opinion and that the defendant had a right to develop on cross-examination the foundation of that opinion, but *that the facts so developed did not call for the exclusion of the expert's opinion, and that in reaching a conclusion as to value the jury had a right to consider all the testimony.* Sullivan v. Lear, 23 Fla. 463, 465, 475, 2 South. 846, 11 Am. St. Rep. 388. The doctrine announced in Sullivan v. Lear is substantially the same as that declared in Harris v. Railroad Co., 141 Pa. 242, 253, 21 Atl. 590, 23 Am. St. Rep. 278. I am unable to find anything in Chamberlain v. Dunlop, 126 N. Y. 45, 26 N. E. 966, 22 Am. St. Rep. 807, or, for that matter, in any other case which lays down the rule that a party to an action is bound to ask for the opinion of his expert on any other facts than those upon which he relies.

And if we reject the testimony of Morisette, shall we also reject the testimony of Amos Roper, a witness for the defense, who testified positively on cross-examination that during the period of detention the monthly rent of a Jordan sedan was $600 per month with a chauffeur, or $837.16 for 53 days, after deducting $125 per month for a chauffeur. Can we discard that testimony, which was admitted by both sides as *competent, material,* and *pertinent* to establish the rental value of a Roamer sedan, and virtually instruct the trial court to exclude on its own motion evidence of that character? Have we the right to say, in the absence of objection, that evidence of the rental value of a Jordan sedan is no evidence of the rental value of a Roamer sedan? If plaintiff and defendant had submitted the case on Roper's testimony alone, what verdict would the jury have been justified in rendering?

It cannot be successfully contended that evidence as to the rental value of a car by the day or week is no evidence whatever of its rental value for the whole period of detention. Rental value for the period of detention must be calculated on the basis either of the rental value per day, per week, per month, or per year, and whether the daily, weekly, monthly, or annual rental value should be used as a basis was for the jury to say, taking into account the custom of the business in rent-

ing the property and the time of detention. All of the witnesses both for the plaintiff and the defendant testified to a daily, weekly, or monthly rate, and we must presume that those were the rates which were applied by the renters of automobiles, in order to determine the amount due when cars were hired by the day or for a week or more. For us to assume that there was a special rate for a period of 53 days, which was less than the weekly or monthly rate, is wholly gratuitous, and not warranted in any way by the evidence.

Moreover, the proposition that the rental value of plaintiff's car by the day or week was wholly immaterial, and neither proved nor tended to prove its rental value for the whole period of detention, is irreconcilable with the fifth proposition of the opinion, that the plaintiff was not entitled to recover the use value of his car for the whole period of detention, but only its use value for those days or parts of days when he had use for it. If the daily, weekly or monthly value of the property is worthless for the purpose of showing the rental value for 53 days, it is by the same token equally worthless for the purpose of proving rental value for a detention that is more than a day and less than a week, or more than a week and less than a month, or more than a month and less than two months.

I cannot admit that plaintiff was not entitled to damages for the entire period of detention, and that his recovery must be limited to the number of days that he had use for his property. If that rule be sound, then an automobile used for pleasure purposes solely on Sundays, or an automobile which cannot be used by the owner because he is in Europe or sick, may be unlawfully taken here and used by a wrongdoer for his own purposes, and the owner can recover only for the number of days that he had use for and could have used his machine. Any such principle as that, if established, would in such cases do away with the doctrine of implied contract, where one uses the property of another, and puts a premium on the unlawful taking of motor vehicles by giving their use value to the tort-feasor either for the whole or the larger part of the period of detention. A judicial precedent of that kind would work incalculable harm, and is not only fundamentally unjust, but is out of harmony with the decisions as I read them. Whether the owner has or has not use for his property during the period of unlawful detention, the tort-feasor, whether he uses or does not use that which he has wrongfully taken, is liable for its use value during the whole period of detention. Sedgwick on Damages (9th Ed.) vol. 1, § 243, B; The Mediana v. Comet, [1900] A. C. 113; The Astrakham, [1910] L. R. P. Q. 172; Cook v. Packard Motor Car Co., 88 Conn. 590–592, 593, 594, 92 Atl. 413, L. R. A. 1915C, 319; Banta v. Stamford Motor Co., 89 Conn. 51–56, 58, 92 Atl. 665; Meyers v. Bradford et al., 54 Cal. App. 157, 201 Pac. 471, 472, decided September 6, 1921; Wellman v. Miner, 19 Misc. Rep. 644, 44 N. Y. Supp. 417–419; Dettmar v. Burns, 111 Misc. Rep. 189, 181 N. Y. Supp. 146, 147, 148.

The Conqueror, 166 U. S. 110–133, 17 Sup. Ct. 510, 41 L. Ed. 937, makes no contrary ruling. In that case the plaintiff claimed that either the profits lost or the rental value of steam tugs was the measure of damages for the detention of a pleasure yacht. As the vessel was not

engaged in commercial pursuits, or intended for hire, the court held that damages could not be awarded on that basis. The yacht had no use value in the market, and what she might possibly rent for, or what profits she might possibly make in the carrying trade, was purely speculative. That case was not tried before a jury, but the court was careful to point out that juries may deal with opinion evidence as they please, giving credence to it, or reject it, as their experience or knowledge may dictate. See Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028. In Rockefeller v. Merritt, 76 Fed. 909, 917, 22 C. C. A. 608, 35 L. R. A. 633, which is also cited by the Chief Justice, stocks and securities were unlawfully taken. Of course the measure of damages for withholding that kind of property differs from that which applies to property which has a use value. In Hoyt v. Fuller, 104 Fed. 192, 193, 43 C. C. A. 466, Judge Sanborn held explicitly that the measure of damages for the detention of personal property is the value of its use *during the period of detention*, in the absence of proof of facts and circumstances which warrant special damages, citing Lumber Co. v. Spencer, 81 Iowa, 549, 550, 46 N. W. 1058. The property there involved was corn, which had no rental value.

Of course, if use property be taken at a time when it has no use value, either to the owner or anybody else, use value cannot be awarded for the period when it has no use value. A snowplow north of the equator in July would have no use value, and use value could hardly be regarded as the measure of damages for its wrongful detention during that month.

Plaintiff was not bound, while deprived of his sedan, to keep a diary, and make a note of every time he needed a car, or of the number of hours that he required it. The fact that he owned the car, the nature of the business in which he was engaged, his use of an Anderson car before he acquired the Roamer, and his repeated efforts to secure a substitute, which he says he needed badly, raise the presumption in his favor that he had use for it daily, either for pleasure or for business purposes. Conceding therefore, for the moment only that the contention of the Chief Justice is correct, deductions for the days when Lockwood did not need his car, if any there were, should have been proven by way of defense. No such proof was made, and the record discloses no evidence which would have warranted the jury in making any deduction whatever.

I am quite convinced that, whatever may be the actual value of personal property unlawfully taken, the actual value of its use is controlling. The use value may be out of proportion to the actual value of the article; nevertheless, that fact does not justify the rejection of use value as the measure of damages. Whether personal property has a small actual value and a large use value, or a large actual value and a small use value, its illegal temporary detention in either event results only in the loss of the use, and the value of that use necessarily and logically determines the financial loss. Disproportion between actual value and use value can hardly be considered as pertinent, except for the purposes of reaching a conclusion as to the credibility of witnesses testifying to rental value. Whether witnesses are to be credited, however, is a matter for the jury to decide, and, if there be any testimony

to sustain the jury's verdict, that testimony must be given full faith and credit on appeal.

Let us now consider the question of whether Lockwood did or omitted to do anything which increased the loss naturally and directly resulting from the unlawful taking and detention. It is suggested that Lockwood is entitled to no damages for the period of detention, inasmuch as he might have promptly given the bond provided for by section 455 of the Code and thereby secured the immediate return of the attached sedan. The rule that a party aggrieved cannot do or omit to do anything which will unnecessarily increase his damages applies, as I understand it, to damages which do not necessarily result from the unlawful act, and not to damages which are the direct, necessary, and natural consequences thereof. If a vessel is rammed, and the owner is deprived of his vessel, he is entitled to damages for the period of detention reasonably necessary for the making of the repairs. He cannot, however, increase his damages by not making the repairs promptly, or by taking an unreasonably long time to make them. The Mascot (C. C. A.) 282 Fed. 766.

But, if Lockwood was bound to take immediate legal steps to secure the return of his property, the record discloses that he did that very thing. Section 462 authorized him to file his petition under oath, setting forth his claim to the property, and on the filing of that petition the court, without other pleading, was required to inquire into the claim, to impanel a jury upon the demand of either party to try the issues involved, and on the verdict of the jury to make such order as might be necessary to protect the rights of the petitioner. Lockwood filed the petition by that section provided, and on the finding of a jury that the car belonged to him the court ordered its return. It cannot, therefore, be said that Lockwood neglected to do anything which he ought to have done to secure with reasonable promptitude the use of his automobile. In fact, the record shows affirmatively that the delay in returning the automobile after the trial of property rights was due entirely to the conduct of Moses & Sons, and not to that of Lockwood.

The appellee in this case was under no legal or moral obligation to give a bond that he would satisfy the claim of the attaching creditor to the extent of the value of the Roamer sedan. If his failure to give such a bond be a bar to the recovery of use value, then by a parity of reasoning it would seem to bar the recovery of the value of his property, if it was destroyed while under attachment, and after the lapse of a reasonable time to secure its release under section 455. At the very most, Lockwood's ability to give a bond and to secure it on reasonable terms was a matter of defense, and should have been proven by the defendant. No such proof was made. No duty devolves on an innocent owner to save a tort-feasor from the immediate, direct, and proximate consequences of the latter's unlawful acts.

In my opinion the decision of the trial court should be affirmed.