SUMMERS & LEWIS v. I. S'. SANDERSON, et al.

Middle Section.    February 21, 1928.

Petition for Certiorari denied by Supreme Court, June 30, 1928.

Richard L. Porter, Elkin Garfinkle and W. B. Marr, of Nashville, for appellants, Sanderson, et al.

Norman Farrell, of Nashville, for appellees, Summers & Lewis.

CROWNOVER, J. The complainants, a copartnership, composed of two married negro women, brought this suit against the defendants to replevin a small stock of groceries and fixtures, and to enjoin further proceeding under an execution alleged to have been maliciously and wrongfully levied upon said property, and to recover damages for the wrongful seizure and detention. The defendants denied liability and filed a cross-bill.

The Chancellor decreed the property to complainants, sustained the replevin and injunction writs, and awarded complainants $250 compensatory damages, and $500 punitive damages against all the defendants, except Jake Levine, Justice of the Peace. The other defendants excepted, appealed to this court and have assigned eleven errors, all of which go to the questions of defendants' liability for damages, the proper measure of damages, and challenge the court's jurisdiction to assess damages at all, but no question is raised as to the complainants' title and right to the possession of the property replevined.

The facts necessary to be stated are that the defendant Sanderson had an account against C. W. Summers, the husband of one of the complainants, which he placed into the hands of the James-Sanford Agency for collection. The defendant George W. Carter is a constable and an employee of the agency. Defendants W. B. Marr and F. A. Wilks are on the official bond of Carter as constable, and Marr is an attorney and represents the agency. The defendant Jake Levine is a Justice of the Peace.

The complainants in November, 1924 entered into a copartnership agreement to buy and operate a grocery business in the City of Nashville, in the name of the Cash Mercantile Company, and they put in $150, each, and, through their husbands purchased the stock of goods and fixtures from T. A. Evans. As each of the complainants worked elsewhere, they employed C. W. Summers to operate

the business for a salary of $10 per week, but he owned no interest in the business.

A judgment for $105.62 was taken on the account in favor of Sanderson against C. W. Summers, on January 16, 1925, on Jake Levine's Justice of the Peace Docket. An execution was issued on said judgment at the instance of the collection agency, and was levied February 12, 1925 by said constable on the aforesaid stock of groceries and fixtures, located on Jackson street in the City of Nashville, as the property of C. W. Summers. The officer demanded the key and locked up the goods, and the store remained closed under the levy for eight days, until the bill was filed on February 20th, in the present suit.

The first assignment raised the proposition that the chancery court is without jurisdiction to assess damages. We think that this assignment is not well made, first, because the chancery court has jurisdiction of replevin suits concurrent with the circuit court, and on the issue being found for the complainant, damages for the seizure and detention may be awarded. See Gibson's Suits in Chancery, revised edition, sec. 1053, Shannon's New Code, 5143; and, second, because, where the chancery court acquires jurisdiction for one purpose, it may proceed to decide all the issues and to award complete relief. See Gibson's Suits in Chancery, revised edition, sections 36 and 38. The court having acquired jurisdiction of the replevin suit and granted an injunction, it acquired jurisdiction of the whole case and had a right to award damages for the wrongful seizure and detention. This assignment must be overruled.

The second assignment that the Chancellor erred in granting and sustaining the injunction, as the replevin writ gave complainants full and complete relief is not well made, for several reasons. First, the injunction was necessary to fully protect complainants' rights in said property against the wrongful seizure and detention; second, as the defendants are not now contesting complainants' title to said property, although they did in the trial court, the injunction will work no hardship on defendants, and it now becomes a moot question in so far as the defendants are concerned, as the damages awarded below were not granted by virtue of the writ of injunction, but under the replevin writ for the wrongful acts of the defendants.

The third assignment is that the proper measure of damages for the wrongful levy of the execution was the cost of making a replevy or refunding bond for the property. This assignment has given us some concern, but after a careful examination of the record and the authorities, we are of opinion that it is not well made and should be overruled. It is a fundamental rule of law in Tennessee, as well as elsewhere, that there can be no recovery for loss which might have been prevented by reasonable efforts on the part of the person in-

jured. 17 C. J., 767-779; 8 R. C. L., 442-450; Johnson v. Brown, 138 Tenn., 395, 198 S. W., 243. And this rule has been extended by courts of some of the States to cases of unlawful seizure and detention of property by attachment and executions, and it has been held that it is the duty of the person whose property was levied upon to execute a replevin or refunding bond and procure the return of the property at once in order to mitigate the damages from its wrongful seizure under legal process. See Moses & Sons v. Lockwood, 295 Fed., 936, 33 A. L. R., 1467, and cases cited under the notes in that case on pages 1479-1481. But the courts have held on this proposition that the efforts which the injured party must make to avoid the consequences of the wrongful act or omission, need, however only be reasonable under the circumstances of the particular case, his duty being limited by the rules of common sense and fair dealing. See Railroad Co. v. Fleming, 14 Lea, 128; 17 C. J., 768-769. But under the circumstances of this case, we think the complainants took legal steps to secure the return of the property within a reasonable time. Their husbands went to the agency and requested the release of the property and the return of the keys, which were refused, then their solicitor called up by telephone the solicitor for the defendants, explained the situation and requested the release of the property, but he was told that the attorney would look into the matter and advise him later. Relying upon these things they deferred taking action in the matter until it was ascertained that the property would not be released and they filed this bill; hence we think that complainants took legal steps within a reasonable time, and as the damage amounts to more than a mere cost of making a replevy or refunding bond, this assignment must be overruled.

The fourth assignment to the effect that complainants willfully permitted the damages to accumulate, is not well taken, for the reasons stated under the third assignment. We think they took legal steps within a reasonable time, under the circumstances of this case, hence this assignment is overruled.

The fifth and sixth assignments, that the Chancellor erred in allowing the complainants damages on a basis of twenty-five per cent net profits of sales, and in giving complainant a decree for loss and injury to the reputation and business in excess of that shown by the proof, are sustained.

The Chancellor decreed complainants $250, compensatory damages. In this we think he erred, as we think the proof showed that complainants made a gross profit of twenty-five per cent on the sales, and that the real damage was this amount less expenses. Complainants' witnesses testified in some places that the twenty-five per cent was net profits, but at other times the same witnesses testified that it was gross profits. After carefully reading the record, we hold that the gross profits were twenty-five per cent, and the expenses

$20.32, and on this basis complainants' damage for the eight days while the store was closed, was in loss of profits $25.93, and loss of perishable goods $41.15. The sales from February 20th to March 20th, immediately after complainants resumed business, were only thirty-one per cent of that before the levy, hence on this basis the actual loss to the reputation and business during these thirty days was only $58.34, thus making a total loss or actual damages $125.42; hence these two assignments of error are sustained and the decree of the Chancellor is modified to this extent. Speculative and remote damages are not recoverable, but evidence of past and probable future earnings of an established business is competent. See Donnelly v. Jackson Brothers, 2 Hig., 408; Hagan v. Trust Co., 124 Tenn., 93, 99-103, 136 S. W., 993.

The seventh assignment that the Chancellor erred in decreeing complainants $500 punitive damages, as there was no malicious or wanton misconduct shown on the part of the defendants, should be sustained. The store was being operated by C. W. Summers, and he had made as many as three payments on this debt out of the cash drawer before being sued. The fact that he and the others stated that the business belonged to complainants only did not free the transaction from a taint of suspicion that C. W. Summers owned and was operating the store in his wife's name in order to avoid his creditors, as the officer stated, without objection, that he had been informed that C. W. Summers was a tricky negro and would deny his identity and ownership to keep a levy from being made. So taking everything into consideration, we do not think these defendants were guilty of maliciously and wantonly levying on this property in total disregard of complainants' rights, hence, they are not liable for punitive damages. We think that complainants have been hereinabove allowed damages ample to compensate them for all losses sustained. Hence this assignment of error is sustained.

The eighth and ninth assignments that the Chancellor erred in rendering a decree against W. B. Marr individually, are sustained in so far as the decree is rendered against him as solicitor for defendants, but we think he is liable as one of the sureties on the constable's bond. The proof shows that this execution was levied on the property without Mr. Marr's knowledge, and the fact that the solicitor for the complainants telephoned him of the situation, and that he promised to look into the matter and report to the solicitor for complainants, but failed to do so, is not sufficient to hold him liable as attorney. However this is immaterial as we hold that he is liable as surety on the constable's bond, and to this extent these assignments are overruled.

The tenth assignment goes to errors committed by the Chancellor in not finding certain facts in favor of the defendants as requested. In view of chapter 68 of the Acts of 1927, which provides that the

finding of facts by the Chancellor is not conclusive on the appellate court, this assignment is overruled, except in so far as the facts found by the Chancellor are not in accord with the facts found by this court in this opinion.

The eleventh assignment to the effect that the complainants had been illegally operating their business under a license issued to another party, and for four days without any license whatever, is not well made, as the proof showed that the complainants obtained a license to operate the business on the day that the levy was made, and the fact that they had been operating without license before the levy does not warrant the defendants in making a levy on their property. This is not a suit by complainants on a contract. If the complainants had no license during the time that they were closed and for a month after they resumed business, they would have no right to recover the loss of profits on the sales, but the proof shows that they did have a license during that time. The fact that they had no license before the levy could not affect the situation at all. The rule is universal that a foreign corporation even wrongfully in the State, is entitled to the aid of the court in protecting its property. See Grader Co. v. National Bank, 7 Hig., 434; Louisville Property Co. v. Nashville, 114 Tenn., 213, 84 S. W., 810. This assignment of error must be overruled.

It results that several of the assignments of error having been sustained, the decree of the Chancellor is modified to the extent that a decree will be entered in this court in favor of the complainants Summers and Lewis and against the defendants in the sum of $125.-42, together with interest thereon from March 20, 1925. The costs that accrued in the court below is adjudged against the defendants, but the cost of the appeal is adjudged against appellees Summers and Lewis, and the sureties on their prosecution bond. Executions will issue accordingly.

## OPINION ON PETITION TO REHEAR.

In this cause Summers and Lewis have filed a petition for a re-taxation of the cost, in which they insist that they should not have been taxed with all the cost of the appeal, which petition has been answered by the defendants Sanderson and others.

Upon consideration of the petition and the authorities cited, we are of the opinion that the petition should be granted and that the petitioners Summers and Lewis should be taxed with only five-sixths of the cost of the appeal, and that the defendants should be taxed with the other one-sixth. The cost of the lower court will remain as heretofore adjudged. Executions will issue accordingly.

Faw, P. J., and DeWitt, J., concur.