[Civ. No. 2194. Second Appellate District.—May 17, 1918.]

## FELIX R. MORNEAULT, Respondent, v. NATIONAL SURETY COMPANY (a Corporation), Appellant.

ATTACHMENT—ACTION ON BOND—PREVIOUS SATISFACTION OF JUDGMENT FOR COSTS—TIME OF COMMENCEMENT OF ACTION.—An action will lie on an undertaking given on the issuance of a writ of attachment when the judgment in favor of the defendant for costs has been satisfied, notwithstanding the time for appeal from the judgment has not expired.

ID.—ATTACHMENT OF AUTOMOBILE—MEASURE OF DAMAGES.—In such an action, the attached property being an automobile and kept by the plaintiff, for sale only, the plaintiff is only entitled to damages for depreciation in value for the time it was held under attachment, and is not entitled to any compensation for being deprived of its use, since the damages depended upon the use to which the owner of the property would put the same had his possession of it been undisturbed.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge.

The facts are stated in the opinion of the court.

Benjamin E. Page, Arthur C. Hurt, and Arthur F. Coe, for Appellant.

Eugene A. Holmes, for Respondent.

JAMES, J.—This is an appeal from a judgment entered in favor of the plaintiff and against the defendant for the principal sum of five hundred dollars. The alleged liability of the defendant to the plaintiff arose by reason of the following facts: On about the 15th of April, 1915, one Dennis commenced an action against respondent herein, seeking to recover the sum of one thousand dollars. Dennis took out a writ of attachment in the action, giving a bond in the sum of five hundred dollars to indemnify the plaintiff for any damages which he might suffer by reason of the issuance of the writ. The undertaking on attachment was in the usual form and was conditioned that "the said plaintiff will pay all costs that may be awarded to the said defendant and all damages

which the said defendant may sustain by reason of the said attachment, not exceeding the sum of five hundred and no/100 ($500.00) dollars. . . . '' Upon receiving the writ of attachment the sheriff proceeded to levy upon an automobile owned by respondent here, who was the defendant in the case mentioned, and the automobile was held under attachment from April 16, 1915, to August 2d of the same year. On the latter date judgment was entered in favor of this respondent in the attachment suit, which judgment was that the plaintiff should take nothing and that defendant recover costs in the sum of $20.75. The costs were paid and the judgment was thereby satisfied. This action, brought to recover from the surety on the attachment bond damages alleged to have been sustained by the defendant in the attachment suit by reason of the attachment, was commenced on October 25, 1915.

Appellant's first point is that this action cannot be maintained because the time allowed within which an appeal might be taken from the judgment in the attachment suit had not expired when the complaint of this plaintiff was filed. We have already noted that the judgment in the attachment suit was in favor of the defendant for costs and that the costs were paid and the judgment satisfied. We do not think that after voluntarily satisfying the judgment the plaintiff in the attachment suit could have maintained an appeal from that judgment. It he could not, then the judgment was final upon satisfaction being entered. Section 1049 of the Code of Civil Procedure provides that an action is deemed to be pending from the time of its commencement until its final determination upon appeal, ''or until the time for appeal has passed, unless the judgment is sooner satisfied.''

The main contention urged on the part of the appellant goes to the question of the sufficiency of the evidence to sustain the findings made by the court. The trial judge found that plaintiff had been deprived of the use of the automobile from April 16 to August 2, 1915, and that said use during said period was reasonably worth the sum of $545. He found that plaintiff was damaged further by reason of the attachment in the amount of five hundred dollars, that sum representing the depreciation in value of the automobile during the period just mentioned. The total amount of damages found to have been sustained was the sum of these two items, to wit: $1,045. As the maximum of the undertaking was five hundred dollars,

judgment was entered for that sum.   It seems very clear to us that plaintiff could not be allowed compensation for being deprived of the use of his automobile and also for the amount of depreciation in value of the machine.   We think that the damages to be recovered in an action of this kind depend upon the use to which the owner of the property would put the same had his possession of it been undisturbed.   If the evidence in this case shows that the plaintiff was using his automobile for his convenience or in his business, then the rental value of the same would seem to be a proper basis upon which to estimate the damages for its detention.   On the other hand, if the evidence shows that the plaintiff held the automobile for sale, making no such use of it as has been described, then any depreciation in its value might properly furnish a like basis for the estimation of damages.   Under conditions first instanced, it would not appear that the attachment defendant would have sold his machine had he had it in his possession, with liberty so to do; hence he would have lost nothing by reason of depreciation.   We think the evidence in this case negatives any claim for the value of the use of the automobile and that the evidence shows that defendant at the time the vehicle was taken from his possession was holding it for purposes of sale only.   On this point he said: "I did not drive the car much during the first part of the year 1915, you know, because I wanted to sell it, but I left it in the garage a while for sale.   I left it there two or three weeks, I guess.   I took it out one time; I got an opportunity and took it out.   I went down to see a piece of real estate at Monrovia.   I was trying to exchange some property I had north and went down there to see about an exchange of the property for the automobile. . . . I always borrowed a license when I was using the car.   I think three times was all that I used it while I had it in the garage.   When I took it from the garage I used their number.   I had different parties looking at it and I put it on sale.   I was not using it the first part of the year otherwise than demonstrating it and showing it to customers.   I did not use it otherwise prior to April, 1915.   I was offering it for sale; I wanted to sell it, as I was getting short of money."   The court: "What was the value of the car when the sheriff took it?   A. I refused $850 for it just a few days before they took it; they offered me in the garage for the car; I wouldn't take it; I wanted a thousand dollars, and all they

offered me was $850, and I didn't take it. I sold it for $450 cash and a lot in Santa Monica. I was figuring the lot was worth two hundred dollars. . . . '' Plaintiff nowhere testified that had he remained in possession of the car he would have made use of it in any way at all except to offer it for sale. That he had no such other use for it is corroborated by the fact that upon regaining possession of it he proceeded to sell it. The result of this testimony, we think, must be to eliminate from consideration altogether the finding of the court as to what the rental value of the machine was during the period from April 16th to August 2d. The fact, of course, is to be noted that as the maximum liability on the bond was five hundred dollars, if either item of damage as found by the court is sustained by the evidence, the judgment will be supported, for the value of the use is fixed at $545 and the depreciation in value at five hundred dollars in the court's findings. We then turn to a consideration of the evidence touching the value of the property. It was necessary for the plaintiff to show both the value of the automobile when taken under the writ and its value when returned to him. As to that matter the court made this finding: ''That the said automobile belonging to said Morneault and so attached was, upon the sixteenth day of April, 1915, worth $1,150. That upon the second day of August, 1915, the date when said automobile was returned to the possession of the plaintiff herein, it was worth $650 and no more.'' It must be said that there is some evidence to sustain the finding as to the value of the automobile as fixed by the court as of the date when the attachment was made as being $1,150. Plaintiff's witnesses were contradictory upon that point. A witness who had long experience in handling the particular kind and manufacture of machine as that of the plaintiff testified that the machine when he saw it before the attachment was levied was worth $850. A witness who had never seen the machine stated that, basing his opinion upon a description of the car as given by the first witness, he would say it was worth about $1,150. Considerable testimony was given as to the rate of depreciation of the machine, but an examination of that testimony will show that it all had reference to a machine in use, a large element of depreciation being ''wear and tear.'' There was no testimony fixing the value of the automobile at the time it was received back by the plaintiff, except that given by the plaintiff himself and which

we have already quoted. That testimony referred to the amount received by the plaintiff when he finally traded the car for $450 cash and a lot. There is nothing in that testimony which indicates what the market value of the machine was at the time the attachment was released. What the plaintiff actually received for it may have been more or less than its market value. And so, we think, that the finding as to depreciation in value of the car being five hundred dollars lacks support in the evidence.

The judgment appealed from is reversed.

Conrey, P. J., and Works, J., *pro tem.*, concurred.