[Civ. No. 3205. Fourth Dist. Feb. 3, 1943.]

NATIONAL FUNDING CORPORATION 'OF CALIFORNIA (a Corporation), Appellant, v. WALTER G. STUMP et al., Defendants; COMMERCIAL CREDIT COMPANY (a corporation) et al., Respondents.

Sidney A. Shoop, Julius Novack, Elmer P. Bromley, H. E. Lindersmith and Frank E. Carleton for Appellant.

Wm. G. Junge, Daniel M. Potter and Geo. S. Hupp for Respondents.

BARNARD, P. J.—This is an action in claim and delivery to recover the possession of a Packard automobile.

The defendants King were automobile dealers in Victorville with a branch place of business in Barstow. For several years, the Bank of America had been "flooring" and financing automobiles for them under the Uniform Trust Receipts Law (Civ. Code, div. 3, pt. 4, tit. 14, ch. 3a). The

last statement of such trust receipt financing in connection with these defendants was filed with the secretary of state on December 21, 1940, pursuant to section 3016.9 of the Civil Code. On December 17, 1940, King Brothers employed the defendant Stump as manager of their Barstow branch. During the next three months King Brothers purchased some five or six Packard automobiles from Earl C. Anthony, Inc., which were financed and paid for by King Brothers through trust receipts with the Bank of America. These cars were turned over to Stump and sold by him in the regular course of business with the exception of the last one, which is here in controversy.

On or about March 10, 1941, Stump went to Los Angeles and got this last car from Earl C. Anthony, Inc., taking it to Barstow. He testified that he paid nothing to Earl C. Anthony, Inc. for the car, that the car was not charged to him, that the Bank of America paid Earl C. Anthony, Inc. for the car, and that he had no "flooring" arrangement with the Bank of America. Earl C. Anthony, Inc. handed Stump a carbon copy of the invoice, which was not marked paid and which reads in part: "Sold to Bank of America—Victorville, for Walter G. Stump, Barstow, California." About the same time the Bank of America paid Earl C. Anthony, Inc. $1,086.50, the full purchase price of the car, and a regular trust receipt therefor was executed by the Bank of America and by King Brothers. On or about March 28, 1941, the Commercial Credit Company, which is engaged in the business of "flooring" automobiles under the Uniform Trust Receipts Law, purchased from the Bank of America and paid for all of its "flooring" agreements with King Brothers covering new and used cars at both Victorville and Barstow, including the car here in question, and executed another trust receipt with King Brothers. On March 31, 1941, a statement of trust receipt financing was filed with the secretary of state which had been signed on March 27, 1941, by King Brothers and Commercial Credit Company.

In the meantime, on March 24, 1941, Stump brought this Packard car to the appellant's place of business in San Bernardino and applied for a loan thereon. The car had no license plates on it and was not then registered to anyone. Stump exhibited the copy of the invoice which had been given him by Earl C. Anthony, Inc. and which was not

marked paid, and also showed the plaintiff a letter signed by Earl C. Anthony, Inc. stating that Stump was an authorized Packard dealer at Barstow. In the presence of plaintiff's manager Stump executed a dealer's report of sale and application for registration which purported to be a sale of the car from Stump as a dealer to Stump as an individual. The plaintiff's manager called Earl C. Anthony, Inc. on the telephone but there is no evidence as to what was said by either of them. Without making any other investigation the plaintiff loaned Stump $979.25 on this Packard car and took a note for $1,179.25 with a chattel mortgage on this Packard car and a Plymouth car owned by Stump, and which had been covered by a previous chattel mortgage on which $200 was still due to the plaintiff. On March 31, 1941, a copy of the chattel mortgage was delivered to the Motor Vehicle Department for registration and on the same day application was made to have the Packard car registered with Stump as registered owner and the plaintiff as legal owner. Because of an error in the engine number of the Plymouth car on the mortgage it was not then registered but was returned to the plaintiff for correction. On April 14, 1941, a certificate of registration was issued naming Stump as registered owner of the Packard car and the plaintiff as legal owner, but was issued without reference to the mortgage. The plaintiff's manager corrected the copy of the mortgage which had been returned by the Motor Vehicle Department but did not make this correction on the original chattel mortgage or have the same reexecuted. On April 30, 1941, the copy of the chattel mortgage, as thus corrected, and the certificate of registration issued April 14, 1941, were again received by the Motor Vehicle Department and a new certificate of registration in the name of Stump as registered owner and the plaintiff as legal owner, supported by the chattel mortgage, was issued on May 14, 1941.

Stump failed to pay in accordance with the terms of his note and chattel mortgage and the plaintiff brought this action for the purpose of recovering possession of the car and establishing its right thereto. In the course of the action it obtained possession of the car and sold it to a third party, so that a return of the car was not possible. After a trial the court found in favor of the defendants and entered a judgment which, so far as material here, allowed $200 for

depreciation of the car between the time it was taken by the plaintiff and the date of the trial, and awarded full value of the car at the time it was taken by the plaintiff by giving the Commercial Credit Company a judgment for $1,086.50, the amount due on its trust receipt, and giving King Brothers $363.50 covering the remainder of the value of the car, which amount included the $200 allowed for depreciation, and further awarding King Brothers $950 as detention damages. From this judgment the plaintiff has appealed.

It is not contended that Stump had any right or authority to mortgage this car to the appellant. The car was paid for by the Bank of America under a trust receipt arrangement with King Brothers and delivered to Stump as a representative of King Brothers, who executed a trust receipt to the bank. The bank later transferred its interest to the Commercial Credit Company which filed the necessary statement with the secretary of state and also received another trust receipt from King Brothers. There is nothing in the evidence to show that the bank and the Commercial Credit Company, respectively, did not have good title to this car during the times material here. The appellant's only attack on the validity of the trust receipts held by these respondents is that the court erred in finding that "for several years prior to December 12, 1940, the Bank of America had floored cars for said King Brothers." It is argued that the previous statement of trust receipt financing between the Bank of America and King Brothers expired on December 14, 1940, that the next one was not filed until December 21, 1940, and that therefore the latter of these was not a renewal of the former and the flooring was not continuous. The matter here in question arose while the statement filed December 21, 1940, was in full force and effect, and whether or not such "flooring" had been continuous in the past is not material here.

Appellant's main contention is that it was entitled to rely upon the apparent authority of Stump to mortgage this car and that the respondents are estopped to deny that authority because they left the car in Stump's possession and thus enabled him to perpetrate the fraud. The car was covered by the trust receipts and no reason appears why the protection afforded by the Uniform Trust Receipts Law was

not available to these respondents who had complied with the provisions thereof. Moreover, the mere fact that Stump was in possession of the car is overcome by a number of circumstances which should have put the appellant upon its guard. His possession was one for the purposes of sale only, and his taking the car to San Bernardino was in violation of the terms of the trust, and was unknown to the holders of the trust receipts. It may reasonably be inferred that the appellant was somewhat familiar with the way such business is usually conducted and with the necessity of looking into the title of a new car, even in the case of a dealer, with the exception of a sale made in the regular course of trade. The fact that Stump had driven the car to San Bernardino, some 100 miles from his place of business, without license plates of any kind upon it was, in itself, a suspicious circumstance. The fact that he exhibited a copy of a letter purporting to state that he was a sub-agent of Earl C. Anthony, Inc. would in no way tend to establish the further fact that he had fully paid for this car or was in a position to mortgage it. Not only was the copy of the invoice which he showed the appellant not marked paid but it showed on its face that the car had been sold to the Bank of America for Stump, and the appellant made no effort to ascertain whether the Bank of America still had a claim upon the car. The appellant relies in this connection upon the testimony of its manager that this copy of the invoice "was made out to Walter G.. Stump." On the other hand, the only reasonable inference which may be drawn from the testimony of Stump is that the copy of the invoice which he.showed to this manager was the copy which had been given to him by Earl C. Anthony, Inc., which was introduced in evidence, and which sets forth that the car was sold to the Bank of America for Stump. The further fact that Stump, in the presence of the appellant's manager and in connection with the making of the loan, made out the usual dealer's report of sale from himself as dealer to himself as an individual is such an unusual circumstance as would cause a reasonably prudent person not only to inquire why this was done, but to take steps to make sure that he had paid for the car and was entitled to thus deal with it. These circumstances were sufficient to put the appellant upon its guard and the slightest investigation would have disclosed the true ownership of the car and the interest held by the respective respondents. The implied finding of the court

as to the negligence of the appellant in this regard is amply supported by the evidence.

The appellant next contends that its mortgage met all of the requirements of the Vehicle Code for a valid chattel mortgage. This is not strictly correct as a true copy of the mortgage, as executed, was never filed or registered with the Motor Vehicle Department. However, this is not very important here since no registration of that mortgage took place until April 30, 1941, long after the respondents' rights had accrued and since, under the circumstances which here appear, the appellant was not entitled to rely upon any apparent authority of Stump to mortgage the car.

It is next contended that the court failed to find upon a material issue in that it did not make a specific finding to the effect that this appellant had knowledge of suspicious circumstances sufficient to put it upon inquiry which, if pursued, would have disclosed the respondents' claims. The findings which were made necessarily involve an implied finding to this effect and, under the evidence, this implied finding is the only one which could reasonably have been made.

Some contention is made that King Brothers were not regular Packard dealers, that under section 206 of the Vehicle Code they could not secure dealer's license plates for such cars, and that they could not legally operate this car without such license plates. We cannot see that this is material here since the car was taken on this trip to San Bernardino by Stump without their knowledge or consent. This is not a case of misuse of license plates, and the only significant fact in this connection is that no license plates were on the car at the time the appellant made its loan, which fact should at least have aroused its curiosity.

The only other point which requires consideration is that that part of the judgment which allows $950 for detention damages is not authorized by law. This car was being kept for the purpose of sale and under such circumstances detention damages are not ordinarily recoverable. (*Morneault v. National Surety Co.*, 37 Cal.App. 285 [174 P. 81].) The respondents were allowed the full value of the car at the time the appellant took possession of it, and the only additional damage they could have suffered would be a loss of interest on that amount in the event they could have sold it at an earlier date. There is no evidence in the record that

such a sale could have been made and no evidence upon which an allowance of such interest could have been based. Moreover, in the other portions of the judgment the sum of $200 was allowed for depreciation on the car from the time the appellant took possession until the date of the trial. The respondents are not entitled to have both an allowance for depreciation and an allowance for the value of the use of the car. (*Morneault* v. *National Surety Co.*, *supra*.) They are entitled to the value of the car at the time it was taken in this action, but not to an amount nearly double that value.

That portion of the judgment awarding $1,086.50 to the Commercial Credit Company is affirmed. That portion of the judgment in favor of King Brothers is reduced from $1,313.50 to $363.50 and, as so reduced, that portion is affirmed. Each party to pay its own costs.

Marks, J., and Griffin, J., concurred.