[Civ. No. 7831.   Third Dist.   Mar. 27, 1951.]

STANLEY JOHNSON et al., Plaintiffs and Appellants, v. CENTRAL AVIATION CORPORATION (a Corporation), Defendant and Appellant; BRUCE GROSS, Respondent.

Honey & Mayall and Ralph E. Kingston for Plaintiffs and Appellants.

Neumiller, Ditz, Beardslee & Sheppard, and Robert S. Thaman for Defendant and Appellant and Respondent.

VAN DYKE, J.—Appellants and cross-respondents Stanley Johnson and Horace B. Baird, a copartnership, brought this action to recover damages from Central Aviation Corporation,

a corporation, respondent and cross-appellant, and one Bruce Gross, respondent. Briefly stated, the complaint alleged that the partnership was the owner of an airplane known as a DC-3, and that Central Aviation Corporation owned a Luscombe airplane; that Bruce Gross was the agent, servant and employee of the corporation and that on October 1, 1947, he and the corporation so negligently and carelessly operated the Luscombe plane that it collided with the DC-3 and damaged the same; that the direct damage to the DC-3 amounted to $4,000, as being the reasonable cost of repairing the same; that the partnership lost the use of the DC-3 for a stated period of time, being further damaged thereby and that before the collision the partnership had entered into an agreement for the sale of the DC-3, but that by reason of the collision and consequent damage to the plane they were unable to consummate the sale to their further damage, consisting of the loss of profits they would have made through the contemplated sale. The corporation and Gross demurred to the complaint and their demurrers were overruled. They also moved to strike out the allegations concerning loss of profits through contemplated sale; they further asked, if that be denied, that there be stricken the allegations concerning damage through loss of use. The trial court, responsive to the motions, struck out the allegations concerning loss of profits and the trial proceeded upon the complaint as deleted.

Trial was by the court without a jury and the court found to be true the allegations concerning ownership of the planes, the agency of Gross and the negligence averred; further that by the collision the DC-3 was damaged in the sum of $2,950, representing the reasonable value of the necessary repairs. The court concluded that the partnership was entitled to judgment against each of the defendants in that sum and judgment was accordingly entered. No award was made for loss of use.

The partnership appealed from the judgment upon the issue of damages and the corporation appealed from the entire judgment against it. Gross did not appeal.

Since the partnership owning the DC-3 has appealed and the corporation owning the Luscombe has likewise appealed, we shall for convenience hereafter refer to them as the appellants and cross-appellant, bearing in mind, of course, that as to the partnership's appeal the corporation is respondent and as to the corporation's appeal the partnership occupies that status.

In support of their appeal, appellants, who were plaintiffs

in the court below, present three contentions which may be stated as follows: 1. The court erred in striking from their complaint the allegations concerning damages through loss of profits from the sale of their plane; 2. The court erred in finding that the reasonable cost of repairing their plane was $2,950, the amount for which judgment was rendered, instead of $3,671.89, which they claim was proved, without contradiction, to be such reasonable cost of repair; 3. The court erred in refusing to allow any damages based upon loss of use of their plane. They request this court, pursuant to rule 23a of the Rules on Appeal, to make new findings of fact awarding them $3,671.89 for cost of repairs and $19,500 for loss of use.

By the cross-appeal taken by the corporation the following contentions are advanced: 1. That the court erred in finding that Gross was an agent, servant or employee of the corporation or acting as such within the scope of any employment at the time of the accident and that therefore the judgment against the cross-appellant should be reversed.

We will first consider appellants' contention that the court erred in striking from the complaint the allegations referring to damages for loss of profits through sale of the plane. This motion addressed to the pleading was made upon the ground that these allegations were sham, immaterial, surplusage, irrelevant, incompetent and constituted conclusions of law. The allegations stricken are: ''That prior to the collision plaintiffs had entered into an agreement for the sale of said DC-3 airplane for the sum of $27,500.00; that the cost of said airplane to said plaintiffs was the sum of $20,000.00 and that by virtue of said agreement of sale, plaintiffs would have made $7,500.00 profit; that by reason of said collision and the negligence of said defendants, and each of them, as aforesaid, plaintiffs were unable to consummate said sale to their further damage in the sum of $7,500.00.''

We think this matter should not have been stricken from the complaint. Section 453 of the Code of Civil Procedure provides: ''Sham and irrelevant answers, and irrelevant and redundant matter inserted in a pleading, may be stricken out.'' We do not think the matter stricken could be termed sham or irrelevant or redundant. In actions of tort there may be, where the circumstances justify it, a recovery for loss of profits resulting from the tort. The rule is stated in 25 Corpus Juris Secundum, 523, section 44 [headnote], as follows:

''There may be a recovery for loss of profits consequent upon torts if such as may naturally be expected to follow from the

wrongful act and if they are certain; but recovery is denied where the profits are uncertain, speculative, or remote.''

This rule is followed in California. (*Hollander* v. *Wilson Estate Co.*, 214 Cal. 582, 586 [7 P.2d 177]; *Martin* v. *Deetz*, 102 Cal. 55, 68 [36 P. 368, 41 Am.St.Rep. 151]; *Hoffmann* v. *Lane*, 11 Cal.App.2d 655, 659 [54 P.2d 477]; *Continental Car-Na-Var Corp.* v. *Moseley*, 24 Cal.2d 104, 113 [148 P.2d 9]; *Tazzano* v. *Kent*, 78 Cal.App.2d 254, 261 [177 P.2d 612]; 8 Cal.Jur. 773.) ■ Even if it be claimed that loss of profits here was defectively pleaded, still the remedy was not by a motion to strike but by special demurrer. (*Swain* v. *Burnette*, 76 Cal. 299 [18 P. 394].) See, also, *Barnes* v. *Berendes*, 139 Cal. 32 [69 P. 491, 72 P. 406], where the trial court was upheld in its refusal to strike from the complaint on motion items of damage which plaintiff was entitled to recover. In this case a single tort was pleaded, and based upon that tort appellants were entitled to recover compensation for all the detriment proximately caused thereby whether it could have been anticipated or not. (Civ. Code, § 3333.) It is true that damages claimed through loss of profits may, upon the trial, be shown to be so speculative and remote that recovery cannot be allowed, but we are concerned here with a question of pleading. There is nothing *necessarily* inconsistent with a claim for damages for loss of use of the plane and a claim for loss of profits upon sale, since both elements of damage might, in a proper case, if the proof warranted, be allowable. Thus, the time for delivery of the plane under the sale might be far enough in the future to enable the owner to use the plane for his own purposes for a period of time before being obligated to deliver it to the buyer in accordance with his selling agreement. ■ We think it could not be said that the allegations concerning loss of profits were sham, irrelevant or redundant. And whether plaintiffs were entitled to recover for both loss of profits and loss of use was a matter which they should have been permitted to prove, if they could.

Appellants next contend that the evidence does not support the court's finding that the reasonable cost of the repairs amounted to $2,950, but on the contrary amounted to a greater sum. Stanley Johnson, one of the appellants, testified that $3,671.89 was the expense incurred in repairing the airplane, excluding any repairs that had been contemplated before the injury to the plane, in order to put it in airworthy condition. It appeared that the plane had been purchased in Florida from the War Assets Administration and had been flown to

Stockton, California, where appellants conducted their business, by means of a ferry permit from the Civil Aeronautics Administration. This permit enabled appellants to fly the plane out to California, but they could not license it for use until certain repairs had been made. But Johnson's testimony as to cost of repairs excluded all repairs except those made necessary by the collision. ■ Upon this issue of the actual reasonable cost of repairs so made necessary there was conflict in the testimony. One Macedo, who said he was a project engineer for Transocean Airlines and familiar with the cost of repairing planes, had inspected the damaged plane and made an estimate of the cost of repair which he testified was reasonable. He testified that 650 man hours of labor at $3.50 per hour was reasonably necessary for the repair of the plane. Johnson testified, on the contrary, that 1,100 man hours had been necessarily used for that purpose. Allowing the full sum claimed by appellants for cost of repair parts, it is apparent that the trial court disallowed in part the claim that 1,100 man hours were necessary. There was a clear issue of fact. The trial court was acting within its discretion in fixing the sum which it did fix as the necessary cost of repairs. We find no error in the trial court's conclusion in this regard.

Appellants contend, finally, that the trial court erred in refusing to allow as damages any sum for loss of use of the plane. Appellants had claimed that this loss of use extended from October 1, 1947, the date of the collision, to April 15, 1948, the date of completion of repairs. As has been said, the plane was not licensed to fly when it arrived in California and could not be licensed until certain repairs had been made and inspection for airworthiness completed by the proper authorities. Appellants were engaged in making these repairs when the collision occurred. It does appear that the repairs necessary to obtain a flying license for the plane could have been accomplished in a fairly short period of time, but it also appears that nothing substantial had been done to the plane after it arrived in July and until the collision occurred. Johnson, in part, explained this by testifying that there was little point in securing a license in advance of either a sale of the plane or contracts for renting the same, since the license, when given, goes for a year and if obtained prior to their needing it the time would in part have expired before either use or sale was consummated. After the collision on October 1, 1947, little was done by appellants in the way of repair until mid-December. This delay in starting the repair

work was claimed by appellants in part to have occurred because there was uncertainty as to whether or not an insurance carrier was liable for such repairs. In part, there was testimony that obtaining the necessary parts was a difficult matter. From the whole of the testimony the court could have concluded that there was no legitimate reason for delaying the start of repairs until the middle of December and also that much less time was reasonably required to complete the repairs than was actually expended. But all of these matters, while they might justify a reduction in the period of time for which loss of use was claimed, would not be sufficient to eliminate the claim entirely, as was done. We have examined the memorandum opinion filed by the trial judge for such light as it may throw upon the reasoning by which it was determined that no award for loss of use was justified and it appears that after considering that loss of use could not be allowed for the full period claimed and intimating that eight weeks would have been sufficient time to repair the plane and that loss of use could not exceed that period, it was then reasoned that the evidence disclosed a used plane not airworthy had been purchased by professional repairers for reconditioning and resale; that the plane was never used but was apparently resold, and that therefore any award for loss of use would be of necessity conjectural and speculative. The rules governing damages for loss of use are clearly laid down in *Valencia* v. *Shell Oil Co.*, 23 Cal.2d 840, 844 [147 P.2d 558], as follows:

"Where a vehicle is damaged by the wrongful act of another, the owner is entitled to recover for the damage done to the vehicle and for the loss sustained by being deprived of its use. . . . A person injured by the wrongful act of another is bound, however, to exercise reasonable care and diligence to avoid loss or minimize the resulting damages and cannot recover for losses which might have been prevented by reasonable efforts and expenditures on his part. . . . Accordingly, an owner's recovery for being deprived of the use of a damaged vehicle is generally to be determined with reference to the period of time reasonably required for the making of repairs. . . ."

In *Malinson* v. *Black*, 83 Cal.App.2d 375, 381 [188 P.2d 788], it was declared to be the general rule "that even though a car be used only for pleasure, the owner is entitled to damages for loss of use, despite failure of the owner to hire another car to take the place of the injured vehicle. (*Pittari*

v. *Madison Ave. Coach Co., Inc.*, 68 N.Y.S.2d 741 (1947).)''

█ It thus appears that no reason existed for the denial of all damages for loss of use in this case unless it can be said that appellants never intended to make any use of their plane. That appears to have been the inference drawn from the testimony by the trial judge. In short, the inference is drawn that because ''a used plane not airworthy had been purchased by professional repairers for reconditioning and resale'' its injury while in their hands, which, from all the testimony, necessitated its being held considerably longer than would otherwise have been the case, did not, in fact, damage them in any amount whatever. But we think the evidence does not support such a view. There was definite testimony concerning the rental value of such a plane and the court had evidence before it which clearly required it to hold that necessary repairs to make the plane usable would require a considerable lapse of time, which time the court could fix from the evidence before it within the maximum and minimum limits shown by the evidence. The court's implied finding, therefore, that appellants had been in nowise damaged by loss of use finds no support in the record.

█ Appellants request this court to make findings of fact concerning the damage suffered through injury to the plane by the collision, but what we have already said upholding the factual determination of the trial court upon this matter is sufficient for denial of such a request. It is for trial courts to resolve conflicts of evidence. █ The same answer must be made to the request that this court find as a fact that appellants suffered damages in the sum of $19,500 for loss of use. This sum is arrived at by allowing such loss of use at a rate testified to by appellant Johnson for the entire period from the date of the collision until the completion of repairs and the discussion heretofore has pointed out there is much conflict as to what loss of use could reasonably be allowed.

█ Cross-appellant, Central Aviation Corporation, contends in support of its appeal, that the evidence does not support the award made against it because there is not evidence sufficient to justify the court's finding that Gross, at the time of the collision, was acting as its agent. It appears from the evidence that Gross was a student pilot who had contracted for a course of instruction in the theory and practice of airplane flight, from cross-appellant who was conducting what is termed a school of aviation. He had received considerable

theoretical training and had arrived at the point in practice flying where he was permitted to make solo flights. He was working, and in order to get in his flying hours he was accustomed to go to the airfield where cross-appellant conducted its school and kept its planes, generally arriving early in the morning so that he might put in some hours before he had to go to his employment for the day. He went to where the Luscombe plane was sitting on the field, and proceeded to taxi it up to the offices of the cross-appellant, where in the normal course he would be checked out for his solo flight. There was testimony that he had theretofore on six or seven occasions taxied a plane up to the check-out point just as he did on the morning when the accident occurred and that this conduct had at least been known to cross-appellant. While he was so taxiing the plane he ran it into the DC-3, causing the damages herein sought to be recovered and there appears to be no issue upon the proposition that he was negligent in so doing. The question here is whether or not from the evidence the court could justly find that his relationship to cross-appellant was such as to make it liable for that neglect under the doctrine of *respondeat superior*. No claim is made to a right to recover upon any other theory and from the pleadings we think it clear that no other theory of recovery has ever been relied upon since this action was begun. The allegations of the complaint are that at the time of the collision Gross was "the agent, servant, or employee of defendant Central Aviation Corporation . . . and was acting within the course and scope of his employment as such. . . . That on or about October 1, 1947, defendants so negligently and carelessly operated their Luscombe airplane . . . as to cause the same to collide with the DC-3 airplane owned by plaintiffs." The court finds these allegations to have been true and makes no finding that any other negligence occurred save that of Gross in driving the Luscombe plane into the DC-3. Cross-appellant contends that the doctrine of *respondeat superior* is not applicable under the facts of this case and that, on the contrary, Gross was at all times, while in charge of the plane, nothing more than a bailee or licensee for whose negligent handling of the plane it was not responsible.

The legal relationship between Gross and cross-appellant was clearly shown without conflict to have been one where by the contract between them he was to receive from them instruction in flying, which included, of course, ground handling of a plane. It included, too, the furnishing to him by the

cross-appellant of a plane for his use during the course of instruction. Both parties were engaged in performing that contract when this accident occurred. We see no reason to hold that, because to the knowledge of cross-appellant he had on several occasions, just as he did on the morning of the accident, taxied the plane intended for his use from its parking place up to the offices of cross-appellant preparatory to being checked out for his solo flight, the regular and contractual relationship between them was somehow changed into one of employer and employee or principal and agent. As a student taking instruction he was neither the servant nor the agent of the flying school while doing those things properly within his course of instruction. By what occurred we hold he did not change that status so as to make the school liable for his acts on the basis of *respondeat superior.*

Generally speaking, there is nothing about airplanes which takes them out of the category of chattels which may be bailed to another for his use, or which another may be permitted by the owner to use, without imposing upon the owner liability for such bailee's or permittee's negligent operation. It is true that the law formerly looked upon aviation as an ultrahazardous activity and the Uniform Aeronautics Act which was once adopted in many states did impose absolute liability on the owner as well as the operator or lessee of every aircraft for any damage to person or property caused by its operation unless there was contributory negligence on the part of the injured person. However, this view has come to be modified and now it is considered that properly handled by a competent pilot an airplane is not an inherently dangerous instrument. Our Legislature has adopted this more modern view and has declared that as to passengers the liability of the owner or pilot of an aircraft shall be determined by the rules of law applicable to torts on the lands or waters of this state arising out of similar relationships, and has further declared that "the liability of the owner of one aircraft to the owner of another aircraft, or to operators or passengers on either aircraft, for damage caused by collision on land or in the air, shall be determined by" the same rules. (State Aeronautics Commission Act, § 2, subds. (f) and (g) [1949 Pocket Supp., 1 Deering's Gen. Laws, Act 151a].) We have no statute respecting airplanes, fixing liability upon owners for permitted use such as we have with respect to automobiles.

It is, of course, true that one permitting to another the use of an airplane may, under general rules of law applicable

to suppliers of chattels, become liable for his own negligence in knowingly permitting such use by one incompetent to exercise the same. It would serve no purpose, however, to state the conditions and the limitations of the rules governing such liability, for no such negligence was pleaded or in anywise relied upon in this action. Under the contract between them for the use by Gross of the airplane furnished him under the provisions of the existing agreement between himself and the cross-appellant he was neither the employee nor the agent of the cross-appellant and they were not, therefore, liable for his negligence under the doctrine of *respondeat superior*.

With respect to respondent Gross and responsive to the appeal of appellants, the owners of the DC-3, the judgment is affirmed as to the award of damages for the reasonable cost of necessary repairs; the judgment is reversed as to respondent Gross for the error of the trial court in striking out the allegations for damage from loss of profits and for error in the trial court's findings that no damage was suffered from loss of use. Responsive to the cross-appeal of Central Aviation Corporation, the judgment against it is reversed. Appellants are to recover costs on appeal from respondent Gross; cross-appellant Central Aviation Corporation is to recover costs on appeal from appellants Johnson and Baird.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied April 26, 1951.

Reporter's Note: Plaintiffs and appellants' petition for a hearing by the Supreme Court was withdrawn by stipulation May 14, 1951.