[No. C050337. Third Dist. Sept. 13, 2006.]

JOHN METZ, Plaintiff and Appellant, v.
LOUIE SOARES, Defendant and Respondent.

## COUNSEL

Law Office of Ladon G. Bader and Ladon G. Bader for Plaintiff and Appellant.

Law Offices of Douglas L. Field, Mark D. McCauley; Law Office of Priscilla Slocum and Priscilla Slocum for Defendant and Respondent.

## OPINION

**SIMS, J.**—Plaintiff John Metz collected classic cars, including a 1971 Jaguar XKE. He entrusted it to defendant Louie Soares, doing business as Olympic Tune Up, for repair. Unfortunately, while in defendant's possession the car was exposed to the elements, ruining the engine and rendering the car a total loss. Although plaintiff accepted a check from defendant's insurer for over $20,000 in compensation, he believed this amount inadequate. Therefore he sued defendant, alleging damages for loss of use. The evidence tended to show plaintiff had not used the car for several years. A jury found plaintiff had no loss-of-use damages.

Plaintiff contends, among other things, that the trial court erred in instructing the jury: "To recover damages for loss of use, [plaintiff] must prove the number of days of lost use until the time [plaintiff] was paid the replacement value." According to plaintiff, he was entitled to the reasonable daily rental value of the car regardless of whether he had used it or not.

 As we shall explain, we disagree with plaintiff. One who does not use a car is not entitled to damages for loss of use. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's complaint, filed on August 19, 2003, alleged: Defendant received plaintiff's Jaguar "[p]rior to September 1, 2000," to repair. Sometime after September 1, 2000, defendant allowed the car to be destroyed by the elements. Plaintiff had demanded its return, but defendant had refused to return it. During defendant's wrongful detention of the car and due to defendant's negligence, plaintiff had suffered property damage in an amount exceeding $25,000 and damage for loss of use at a reasonable value of $300 per day.

Despite these allegations, plaintiff admitted in deposition that he had accepted payment from defendant's insurer for the Jaguar, in an amount he recalled as $21,000 or $22,000, *before filing the complaint.* He believed, however, the insurer had undervalued the car, and that was "not right."[1] He admitted he had begun to think about suing for loss of use when he received the check and decided it did not fully compensate him.

On April 19, 2005, the parties entered into a "Stipulation Regarding Negligence and Per Diem Rental Value," which was read to the jury, that defendant's negligence proximately caused the Jaguar's destruction and the car's reasonable rental value was $300 per day.

Simultaneously, defendant moved in limine for an order that plaintiff was entitled to damages for loss of use "only for the occasional weekends that he would use the vehicle before he delivered it to Defendant." Citing to plaintiff's deposition, defendant asserted that plaintiff "took the car 'out of service' in 1993" and drove it after that only on weekends once a month.

---

[1] Plaintiff acknowledged in limine that he had accepted the insurer's check for "total loss" before filing the complaint. According to defendant's in limine motion, the amount was actually $25,605.75.

Plaintiff filed a countermotion in limine to exclude evidence he used the car infrequently, asserting this fact (as he called it) was irrelevant and prejudicial. According to plaintiff, damages for loss of use of personal property are available per diem for the entire time the plaintiff is deprived of its use (here, until he received payment for the destroyed car), whether or not he had used it before.

After argument, the trial court ruled: "[L]oss of use is to be measured pursuant to the use indicated by plaintiff during his possession of the vehicle."

Viewed most favorably to the judgment, the evidence showed the following:

Plaintiff bought the Jaguar in 1977 to be a "piece" in his classic car collection, not to drive every day. In an unspecified period before he took the car in to defendant, he "primarily" used it on weekends "and once in a while" drove it to work, sometimes every day for a month or two at a time; he also used it for anniversaries. He "didn't drive it that much after 1993," when he "pretty much took it out of service."[2] He admitted it had been out of service in his garage for six weeks immediately before he took it in to defendant in October 1998.[3]

Plaintiff's wife testified that she drove the car "whenever I wanted," "on a daily basis . . . just weeks at a time." When asked whether she had driven it after 1993, however, she admitted she "never kept track of dates or the years." She could not cite any specific year in which she had driven it.

According to defendant, when the car was towed in to his shop, it did not run. The cooling system did not function; belts and hoses were weathered, cracked, and split. The car must have gone without being driven for at least a year.

While the car was in defendant's shop it was registered with the Department of Motor Vehicles as nonoperational.

---

[2] These last quotes came from plaintiff's deposition. Until defendant's counsel confronted plaintiff with his exact words, he claimed "out of service was your term, not mine."

[3] Plaintiff also testified that he brought the car to defendant because defendant had worked on it before and knew Jaguars better than any other mechanic in Lodi, where the parties lived. For the same reasons, plaintiff let defendant keep the car at his shop for years after plaintiff brought it in (from October 1998 until November 2002, when plaintiff believed the damage occurred), despite defendant's apparent lack of progress on the job.

Although plaintiff believed the car was destroyed in November 2002, defendant first confirmed this on March 3, 2003. Plaintiff received and deposited the insurer's check in compensation for the car's destruction on July 7, 2003.

The trial court instructed the jury with a modified version of Judicial Council of California Civil Jury Instructions (2004–2005) CACI No. 3901 as follows:

"Louie Soares' responsibility for John Metz' claimed harm is not an issue for you to decide in this case. You must decide whether John Metz was harmed, and if so how much money will reasonably compensate John Metz for the harm. This compensation is called damages.

"The amount of damages must include an award for each item of harm that was caused by Louie Soares' wrongful conduct, even if the particular harm could not have been anticipated.

"John Metz does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

"The following are the specific items of damages claimed by John Metz[:] Loss of use of the [J]aguar automobile. To recover damages for loss of use, John Metz must prove the number of days of lost use until the time John Metz was paid the replacement value."

The court did not instruct with CACI No. 3903M, requested in limine by plaintiff, which states in part: "To recover damages for loss of use, [plaintiff] must prove the reasonable cost to rent a similar [item of personal property] for the amount of time reasonably necessary to repair or replace the [item of personal property]." (CACI No. 3903M.) However, both counsel told the jury in argument that if plaintiff was entitled to damages this was the measure of damages to apply.

By a vote of nine to three, the jury found plaintiff had suffered no damages.

## DISCUSSION

We shall take plaintiff's contentions in reverse order. Addressing first his claim of instructional error, we determine the law that applies to this case. We then decide whether the trial court properly admitted the evidence to which plaintiff objects.

## I

"For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333.)

■ "Tort damages are awarded to fully compensate the victim for all the injury suffered. [Citation.] There is no fixed rule for the measure of tort damages under Civil Code section 3333. The measure that most appropriately compensates the injured party for the loss sustained should be adopted. [Citation.]" (*Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.* (2001) 88 Cal.App.4th 439, 446–447 [105 Cal.Rptr.2d 856].) "A plaintiff in a tort action is not, in being awarded damages, to be placed in a better position than he would have been had the wrong not been done." (*Valdez v. Taylor Automobile Co.* (1954) 129 Cal.App.2d 810, 821–822 [278 P.2d 91] (*Valdez*).)

The parties do not cite any statute that would provide a specific measure of damages in this case, and we have found none. Thus, the question is simply what "detriment" was "proximately caused" by defendant's breach. (Civ. Code, § 3333.)

Because plaintiff had been compensated for the destruction of the Jaguar, the only issue was loss of use. Plaintiff asserts, citing many California cases, that his actual use of the car before he brought it in to defendant is immaterial: if he was deprived of the opportunity to use the car, it does not matter whether or how much he had been using it before. We disagree. If plaintiff had not used the car for a long time before he brought it to defendant, as the evidence showed, then he could not establish that defendant's conduct proximately caused the particular detriment—loss of use—for which he sought damages.

In *Morneault v. National Surety Co.* (1918) 37 Cal.App. 285 [174 P. 81] (*Morneault*), a jury found that the defendant had wrongfully attached the plaintiff's automobile for several months, and awarded him its daily rental value as damages for loss of use during that period. (*Id.* at p. 286.) The appellate court reversed because the plaintiff had not used or intended to use the automobile before its attachment, but had merely possessed it to offer it for sale. (*Id.* at pp. 287–288.) As the court put it: *"We think that the damages*

*to be recovered in an action of this kind depend upon the use to which the owner of the property would put the same had his possession of it been undisturbed." (Id.* at p. 287, italics added.) If the plaintiff had been using the car for his convenience or in his business, its rental value would have been a proper basis for damages, but absent such use he could not claim such damages. (*Ibid.*)[4]

*Morneault, supra,* 37 Cal.App. 285, does not cite Civil Code section 3333, but applies its rule: A plaintiff is entitled to compensation only for the harm the defendant's conduct actually caused him. By awarding damages for the loss of use of a car plaintiff had not used or intended to use, the jury violated this rule and wrongly put him in a better position than he would have been had the defendant's tort not occurred. (Cf. *Valdez, supra,* 129 Cal.App.2d at pp. 821–822.)

We have not discovered any other California decision addressing loss of use on similar facts. However, courts in other jurisdictions have done so and reached the same conclusion. Perhaps closest on point is *W. B. Moses & Sons v. Lockwood* (D.C.Cir. 1924) 54 App. D.C. 115 [295 F. 936] (*Lockwood*). As in *Morneault, supra,* 37 Cal.App. 285, the defendant wrongfully attached the plaintiff's car, and the jury awarded damages for loss of use based on the car's daily rental value for the full period of detention. (*Lockwood, supra,* 295 F. 936 at pp. 937–938 (maj. opn. of Smyth, C. J.).) The appellate court reversed because the evidence did not show the plaintiff had suffered harm from the wrongful detention for that entire period.

"It is urged that plaintiff is entitled to recover for the entire period during which he was deprived of the car, though there were days or parts of days during which he had no use for it, and there are decisions which sustain him in this contention. *They proceed upon the theory that, since the plaintiff's right of property was invaded by the wrongdoer, he is entitled to recover substantial damages, that the value of the use is not the mere value of the use intended by the owner but the value of the possible use, and that the wrongdoer has no right to consider what use was in fact to be made by the owner. This does not appeal to us. Compensation is the cardinal purpose of the law of damages.* [Citation.] . . .

"We think the better rule is . . . that *plaintiff could not recover merely because he had a right to use, or was in a position to use, the property taken from him, but that it was incumbent upon him to go further, and show he needed the car, and was prevented from using it by the wrongful detention of*

---

[4] The court held that the proper measure of damages under the circumstances was the depreciation in the automobile's market value during the attachment period. (*Morneault, supra,* 37 Cal.App. 285, 288–289.)

*it by the defendant.* This is in harmony with the decision of the Supreme Court of the United States in *The Conqueror* [(1897)] 166 U.S. 110, 133 [41 L.Ed. 937, 17 S.Ct. 510] [impliedly disapproved on another point, *Brooklyn Eastern Terminal v. U.S.* (1932) 287 U.S. 170, 175–176 [77 L.Ed. 240, 53 S.Ct. 103]]. A pleasure yacht was wrongfully seized and detained for five months during the autumn and winter by the collector of customs. Damages were asked by the owner. It was urged that, as the yacht could not be used during the autumn and winter, the owner had suffered no loss. [The Supreme Court sustained this view.] [¶] . . . [¶]

*"Following the rule laid down by these authorities, if there were days when the plaintiff did not have use for his car, they should be deducted from the whole period for which he is entitled to recover damages."* (*Lockwood, supra,* 295 F. at pp. 940–941 (maj. opn. of Smyth, C. J.), italics added.)

Similarly, two state supreme courts have found loss-of-use damages unwarranted where there was no evidence the owner had been deprived of any use he or she would otherwise have made of it during the time of its wrongful detention. (*Durham v. Pekrul* (1981) 104 Wis.2d 339 [311 N.W.2d 615, 618] [antique dolls whose owner had never used them wrongfully detained by "doll hospital"; no evidence on which loss-of-use damages could have been calculated]; *Shearer v. Taylor* (1906) 106 Va. 26 [55 S.E. 7, 8] [furniture wrongfully detained had been in storage under contract and remained in storage for six months after released by court order].)

Here, plaintiff admitted he took his car out of service as of 1993, *five years* before he brought it to defendant's shop. He adduced no solid evidence of its use after then. Furthermore, he let defendant keep the car for *over four years*—all that time registered as nonoperational—before it was damaged. Thus, as in *Morneault, supra,* 37 Cal.App. 285, plaintiff was not deprived of the use of his car by any act of defendant. And as in all of the cases just cited, there was no evidence on which any damages for loss of use could have been calculated.

Plaintiff cites many cases that set out some version of the rule stated in CACI No. 3903M: The measure of damages for loss of use is the reasonable rental value of the property for the period in which the plaintiff was wrongly deprived of its use. (*Reynolds v. Bank of America* (1959) 53 Cal.2d 49, 50 [345 P.2d 926]; *Valencia v. Shell Oil Co.* (1944) 23 Cal.2d 840, 844 [147 P.2d 558]; *Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 818 [26 Cal.Rptr.2d 391]; *Harris v. Dixon Cadillac Co.* (1982) 132 Cal.App.3d 485,

490–491 [183 Cal.Rptr. 299]; *Gray v. American Surety Co.* (1954) 129 Cal.App.2d 471, 475 [277 P.2d 436]; *Johnson v. Central Aviation Corp.* (1951) 103 Cal.App.2d 102, 108 [229 P.2d 114]; *Stanley W. Smith, Inc. v. Pilgrim* (1931) 117 Cal.App. 244, 246 [3 P.2d 573]; *Tucker v. Hagerty* (1918) 37 Cal.App. 789, 793 [174 P. 908].) But, so far as the opinions show, these plaintiffs had actually used their property until deprived of its use. (*Reynolds v. Bank of America, supra,* 53 Cal.2d at p. 49; *Valencia v. Shell Oil Co., supra,* 23 Cal.2d at p. 843; *Collin v. American Empire Ins. Co., supra,* 21 Cal.App.4th at pp. 797–798; *Harris v. Dixon Cadillac Co., supra,* 132 Cal.App.3d at p. 488; *Gray v. American Surety Co., supra,* 129 Cal.App.2d at p. 472; *Johnson v. Central Aviation Corp., supra,* 103 Cal.App.2d at pp. 104, 106–107; *Stanley W. Smith, Inc. v. Pilgrim, supra,* 117 Cal.App. at pp. 244–246 [use not discussed]; *Tucker v. Hagerty, supra,* 37 Cal.App. at pp. 789–790.) The courts did not consider whether a defendant may "deprive" a plaintiff of the use of property *he did not use.* Thus these cases do not support plaintiff's position. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

█ The trial court correctly instructed the jury that to receive damages for loss of use, plaintiff would have to prove he lost the use of the Jaguar for a specific period of time due to defendant's fault. Plaintiff failed to do so because he did not prove use of the car at any ascertainable time for five years before he entrusted it to defendant and did not prove he had even wanted to use the car during the four years it sat in defendant's shop.

So far as plaintiff contends the court erred by not also instructing the jury with CACI No. 3903M, the error, if any, was harmless. Counsel told the jury the measure of damages was the car's reasonable rental value and stipulated the amount was $300 per day. The jury could not have been confused about that point.

## II

Having found that the trial court correctly instructed on the applicable law, we can quickly resolve plaintiff's claim of evidentiary error. Plaintiff asserts the jury was not entitled to hear any evidence about his actual use or nonuse of the Jaguar. Because that evidence was essential to prove his entitlement or nonentitlement to damages for loss of use, and plaintiff has not given any reason for excluding it other than his erroneous legal theory of the case, we conclude plaintiff's contention is not meritorious.

## DISPOSITION

The judgment is affirmed. Defendant shall receive his costs on appeal. (Cal. Rules of Court, rule 27(a)(1).)

Scotland, P. J., and Nicholson, J., concurred.